[Civ. No. 27014. First Dist., Div. Three. Feb. 5, 1971.]

MARIE E. CHRISTOFFERSON, Plaintiff and Appellant, v.
KAISER FOUNDATION HOSPITALS et al.,
Defendants and Respondents.

## COUNSEL

Liebermann & Leonard and George Liebermann for Plaintiff and Appellant.

Bledsoe, Smith, Cathcart, Johnson & Rogers, Robert A. Seligson, Sedgwick, Detert, Moran & Arnold and Scott Conley for Defendants and Respondents.

## OPINION

**DRAPER, P. J.** — Plaintiff suffered from a severe skin ailment, lupus erythematosus. From October 1954 to January 7, 1960, at the prescription of her doctors, she took chloroquine diphosphate, a drug manufactured and distributed under the name Aralen by defendant Winthrop Laboratories, a division of Sterling Drug, Incorporated. She developed a severe limitation of vision, now diagnosed as irreversible. Attributing this impairment to the drug Aralen, she sought damages from a number of defendants, including Winthrop, the prescribing doctors, the health plan which provided their services, and the retail pharmacists who filled her prescriptions. After grant of some motions for nonsuit, the case went to the jury as to the remaining defendants. Verdict was for defendants. Plaintiff appeals.

The case against all defendants turns largely upon the liability of Winthrop Laboratories. As to this defendant, the issue is whether its duty to warn depends upon its having knowledge or some means of knowing of possible harmful side effects.

 Plaintiff requested this instruction: "The manufacturer of an article who places it on the market for use under circumstances where

he knows that such article will be used without inspection for defects, is liable for injuries proximately caused by defects in the manufacture or design of the article of which the user was not aware, provided the article was being used for the purpose for which it was designed and intended to be used." Refusal to give this instruction is her principal claim of error.

The court did instruct that the manufacturer of a prescription drug is liable if it fails "to warn the medical profession within a reasonable time after it knew or should have known that serious side effects could be produced in persons such as plaintiff by long continued use of the drug," and "that the manufacturer or distributor of a prescription drug . . . is held to the skill of an expert in that particular business and to an expert's knowledge . . . and is bound to keep reasonably abreast of the scientific knowledge and discoveries concerning his field."

Defendant views its duty to be one to warn of side effects of its drug when such effects should or could have been foreseen by it, while plaintiff would impose absolute liability in its strict form, even though an expert in the field could not have foreseen the possibility of harm.

Plaintiff's view is based upon the rule of absolute liability imposed upon manufacturers generally (*Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; *Vandermark* v. *Ford Motor Co.,* 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168]) which the Supreme Court has applied to manufacturers of mechanical products. No decision of the high court, however, has determined the extent of its application to unforeseeable side effects of a drug.

There is possible conflict in Court of Appeal decisions upon the subject. One case principally relied upon by plaintiff (*Grinnell* v. *Charles Pfizer & Co.,* 274 Cal.App.2d 424 [79 Cal.Rptr. 369]), does apply a strict liability rule. But it dealt with a poliomyelitis vaccine which inferentially caused the very disease against which it was designed to protect (*id.* p. 438). Such direct result, as distinguished from a side effect, has long been recognized as a basis of liability (see *Gottsdanker* v. *Cutter Laboratories* (1960) 182 Cal.App.2d 602 [6 Cal.Rptr. 320, 79 A.L.R.2d 290]). Another (*Toole* v. *Richardson-Merrell, Inc.,* 251 Cal.App.2d 689 [60 Cal.Rptr. 398, 29 A.L.R.3d 988]) contains isolated language relied upon by plaintiff, but in fact turned upon knowing suppression, and even falsification by the manufacturer, of information indicating definitely harmful side effects.

Plaintiff's principal reliance is upon a case in which serious skin damage resulted from use of a deodorant (*Hutchinson* v. *Revlon Corp.,* 256 Cal. App.2d 517 [65 Cal.Rptr. 81]). There the trial court had instructed in

the language of BAJI 218-A, which the appellate court acknowledged to be "based on *Greenman*." (*Id*. p. 522.) The particular error urged by plaintiff-appellant was failure to give an instruction which is not quoted in the opinion, but is described in the opinion as "a truncated version of the tort defined in *Greenman*." The court specifically held that "[w]hile it would not have been error to give it [citation] neither was it error to refuse it" (*Id*. p. 522). *Hutchinson* is susceptible of interpretation as holding that the real error lay in an instruction which in effect negated an implied warranty of fitness by the manufacturer if the article were sold "under its patent or trade name," an obvious error. Nonetheless, the decision does turn upon the view that "plaintiff was entitled to have the jury instructed on a theory of recovery which did not require proof of Revlon's negligence." We note, however, that the adverse physical result there was not only immediate, but under the evidence it was arguable that "plaintiff's strong reaction to the application of Hi and Dri was not due to an unusual susceptibility or allergy. . . ." Rather, "[i]nferably what happened to plaintiff would happen to any woman with pendulous breasts" (fn. 2, p. 521). Here, unlike *Hutchinson,* the adverse effect was not immediate, but eventuated only over a period of years, and was an extremely rare result of use of a medication which has distinct value to mankind in the treatment of serious ailments, e.g. malaria. Granted that *Hutchinson* calls for a rule of absolute liability upon its facts, we do not think that court intended to extend its rule to liability for long delayed and unforeseeable side effects unrelated to the ailment designed to be treated, from a drug which has real value in the treatment of serious ailments. We are unwilling to so broaden the rule.

Defendants' position, on the other hand, does find strong support in a recent decision (*Oakes* v. *E. I. Du Pont de Nemours & Co., Inc.,* 272 Cal.App.2d 645 [77 Cal.Rptr. 709]). Concededly, the case is but analogous, since it deals with use of a weed killer, designed and there used for application by humans, but not for consumption by them. Analogy, however, seems apt on the facts of that case. The court there said: "To exact an obligation to warn the users of unknown and unknowable allergies, sensitivities and idiosyncrasies would be for the courts to recast the manufacturer in the role of an insurer beyond any application of the rationale" involved. ■ We have reviewed the Restatement (Rest. 2d Torts, § 402A, coms. i, j, k) relied upon in *Oakes,* and agree that it properly limits the duty to warn to situations in which the manufacturer "has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of . . . the danger." (*Id*. com. j.) To require him to compose a warning of side effects not suggested by careful laboratory procedures such as preceded distribution of Aralen

would seem to require either a semantically impossible sort of warning or one which would effectively bar the very experience which alone could give early hint of side effects of a new product extremely valuable in many cases of specific illnesses.

■ Here there was evidence, both pro and con, as to possible indications of danger discoverable in time to permit effective warning. This fact question was submitted to the jury on instructions which properly left the conflict to be resolved by it, after an instruction emphasizing the high degree of expertise required of a drug manufacturer.

Supplemental instructions, further stating the duty of the manufacturer, could well have been given. But none were requested since plaintiff relied upon the existence of liability regardless of discoverability of danger. In the circumstances here shown, the instruction sought by plaintiff was not proper.

■ Plaintiff also asserts that the issue of implied warranty of merchantability should have been submitted. But that doctrine has been largely superseded. That theory, moreover, would aid plaintiff only if it required warning of all dangers, including the highly unusual result she experienced, regardless of the possibility of its earlier discovery. This issue we have resolved against her.

■ Over objection, the jury saw a film which illustrated the skin disease for which Aralen was prescribed. Plaintiff asserts error. But the doctor who testified stated that it depicted accurately the progress of the very ailment from which plaintiff testified she suffered. Thus the foundation was proper. The evidence was relevant, and we find no error.

■ The nonsuit of one drug retailer was premature. However, there was no claim that it had knowledge or means of knowledge beyond that of Winthrop, the manufacturer. The jury's resolution of the fact conflict in favor of Winthrop removes all basis for liability of the retailer, and thus no prejudice resulted from the error.

Judgment affirmed.

Brown (H. C.), J., and Caldecott, J., concurred.