[No. S014500. May 30, 1991.]

CARL ANDERSON, Plaintiff and Respondent, v.
OWENS-CORNING FIBERGLAS CORPORATION et al.,
Defendants and Appellants.

COUNSEL

Bogan, Jones & Klausen, Mary K. Jones, Kathleen A. Calaway, Howarth & Smith, Don Howarth, Suzelle M. Smith, Barbara Gregg Glenn, Brian D. Bubb, Brobeck, Phleger & Harrison, George A. Cumming, Jr., Thomas M. Peterson, Meredith A. Nelson, Yusim, Stein & Hanger, Stein, Hanger, Levine & Young and Roger Bentley for Defendants and Appellants.

McCutchen, Doyle, Brown & Enerson, David M. Heilbron, Leslie G. Landau and Fred J. Hiestand as Amici Curiae on behalf of Defendants and Appellants.

Stemple & Boyajian, David Kupfer, Peter Kuntsler and Gerald H.B. Kane, Jr., for Plaintiff and Respondent.

Ian Herzog, Douglas Devries, Leonard Sacks, Bruce Broillet, David Harney, Laurence Drivon, Robert B. Steinberg, Roland Wrinkle, Harvey R. Levine, Leonard Esquina, Rose, Klein & Marias, David A. Rosen and Arlyn M. Egers as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**PANELLI, J.**—In this case we consider the issue "whether a defendant in a products liability action based upon an alleged failure to warn of a risk of harm may present evidence of the state of the art, i.e., evidence that the particular risk was neither known nor knowable by the application of scientific knowledge available at the time of manufacture and/or distribution." (Order on grant of review, May 3, 1990.) As will appear, resolution of this evidentiary issue requires an examination of the failure-to-warn theory as an alternate and independent basis for imposing strict liability and a determination of whether knowledge, actual or constructive, is a component of strict liability on the failure-to-warn theory. It is manifest that, if knowledge or knowability is a component, state-of-the-art evidence is relevant and, subject to the normal rules of evidence, admissible.

We granted review to resolve a conflict between decisions of the Court of Appeal. The Second District held that state-of-the-art evidence is not admissible in this case, a strict liability case based on the manufacturer's failure to warn. The First District, in *Vermeulen* v. *Superior Court* (1988) 204 Cal.App.3d 1192 [251 Cal.Rptr. 805], reached a contrary result. The court in each case recognized that resolution of the issue was dependent on the nature of the failure-to-warn theory and that a conflict existed among the jurisdictions as to whether knowledge or knowability was a necessary factor in the imposition of liability.

We conclude that *Vermeulen* v. *Superior Court, supra*, 204 Cal.App.3d 1192, states the correct rule. The California courts, either expressly or by implication, have to date required knowledge, actual or constructive, of potential risk or danger before imposing strict liability for a failure to warn. The state of the art may be relevant to the question of knowability and, for that reason, should be admissible in that context. Exclusion of state-of-the-art evidence, *when the basis of liability is a failure to warn*, would make a manufacturer the virtual insurer of its product's safe use, a result that is not consonant with established principles underlying strict liability.

## BACKGROUND

Defendants[1] are or were manufacturers of products containing asbestos. Plaintiff Carl Anderson filed suit in 1984, alleging that he contracted asbestosis and other lung ailments through exposure to asbestos and asbestos products (i.e., preformed blocks, cloth and cloth tape, cement, and floor tiles) while working as an electrician at the Long Beach Naval Shipyard from 1941 to 1976. Plaintiff allegedly encountered asbestos while working in the vicinity of others who were removing and installing insulation products aboard ships. The complaint stated causes of action for negligence, breach of warranty, and strict liability and, inter alia, prayed for punitive damages. Pursuant to stipulation entered at the time of trial, plaintiff proceeded only on his cause of action for strict liability and did not seek punitive damages.

Plaintiff's amended complaint alleged a cause of action in strict liability for the manufacture and distribution of "asbestos, and other products containing said substance, which substance contained design and manufacturing defects" which caused injury to users and consumers, including plaintiff,

---

[1] Owens-Corning Fiberglas Corporation, H. K. Porter Company, Inc., Fibreboard Corporation, Pittsburg-Corning Corporation, Owens-Illinois, Inc., Keene Corporation, AC and S, Inc., Armstrong World Industries, and GAF Corporation. As a result of bankruptcy petitions, proceedings have been stayed as to Raymark Industries, Inc., Celotex Corporation, and Eagle-Picher Industries, Inc., which were also named.

while being used in a reasonably foreseeable manner. A fourth cause of action, entitled "Strict Liability Punitive Damages," focused on punitive damages but also included allegations of failure to warn: Plaintiff alleged that defendants marketed their products with specific prior knowledge, from scientific studies and medical data, that there was a high risk of injury and death from exposure to asbestos or asbestos-containing products; that defendants knew consumers and members of the general public had no knowledge of the potentially injurious nature of asbestos; and that defendants failed to warn users of the risk of danger. Defendants' pleadings raised the state-of-the-art defense, i.e., that even those at the vanguard of scientific knowledge at the time the products were sold could not have known that asbestos was dangerous to users in the concentrations associated with defendants' products.

Plaintiff moved before trial to prevent defendants from presenting state-of-the-art evidence. By that time, plaintiff had indicated that he was proceeding, as to defective design, only on the "consumer expectation" prong of the design defect test set out in *Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 426 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1] (hereafter *Barker*). Accordingly, the argument on plaintiff's motion was directed primarily to the applicability of the state-of-the-art defense to that theory of strict liability.[2] The trial court granted the motion, citing the "Hawaii cases,"[3] which held that state-of-the-art evidence is irrelevant to any theory of strict liability. The defendants then moved to prevent plaintiff from proceeding on the failure-to-warn theory on grounds of waiver[4] and fairness. In response to the court's request for an offer of proof on the alleged failure to warn, plaintiff referred to catalogs and other literature depicting workers without respirators or protective devices and offered to prove that, until the mid-1960's, defendants had given no warnings of the dangers associated with asbestos, that various warnings given by some of the defendants after 1965 were inadequate, and, finally, that defendants removed the products from the market entirely in the early 1970's. Defendants argued in turn that the state of the art, i.e., what was scientifically knowable in the period 1943-1974, was their obvious and only defense to any cause of action for failure to warn, and that, in view of the court's decision to exclude state-of-the-art evidence, fairness dictated that plaintiff be precluded from proceeding on that theory. With no statement of reasons, the trial court granted

---

[2] Not before us is the issue whether state-of-the-art evidence is admissible in design defect cases, whether tried on the "risk/benefit" or the "consumer expectation" theory.

[3] *In re Asbestos Cases* (9th Cir. 1987) 829 F.2d 907; *Johnson* v. *Raybestos-Manhattan, Inc.* (1987) 69 Hawaii 287 [740 P.2d 548]; *In re Hawaii Federal Asbestos Cases* (D.Hawaii 1986) 665 F.Supp. 1454.

[4] Defendants asserted that when plaintiff struck his cause of action for punitive damages, he necessarily struck the allegations of failure to warn.

defendants' motion and, at trial, refused plaintiff's request that the jury be instructed pursuant to BAJI No. 9.00.7.[5] After a four-week trial, the jury returned a verdict for defendants, finding in a special verdict that defendants' products had no design defects.

Plaintiff moved for a new trial, asserting that the court erred in precluding proof of liability on a failure-to-warn theory. Plaintiff also claimed that substantial evidence did not support the jury's special finding or the defense verdict. The court granted the motion on both grounds. As to the first ground, the parties reargued the issue of waiver. Plaintiff also urged that knowledge or knowability, and thus state-of-the-art evidence, was irrelevant in strict liability for failure to warn. Plaintiff's main concern, however, was his right to proceed on the theory: "The fact of the matter is, with or without state of the art of the medical literature, I was entitled to put on [failure to warn]." The trial court agreed.

The Court of Appeal, in a two-to-one decision, upheld the order granting a new trial on both grounds. The appellate court added that, "in strict liability asbestos cases, including those prosecuted on a failure to warn theory, state of the art evidence is not admissible since it focuses on the reasonableness of the defendant's conduct, which is irrelevant in strict liability." The dissenting justice urged that the majority had imposed "absolute liability," contrary to the tenets of the strict liability doctrine, and that the manufacturers' right to a fair trial included the right to litigate all relevant issues, including the state of the art of scientific knowledge at the relevant time. We granted review.[6]

The parties repeat the claims made before the Court of Appeal. Defendants contend that, if knowledge or knowability is irrelevant in a failure-to-warn case, then a manufacturer's potential liability is absolute, rendering it the virtual insurer of the product's safe use. Plaintiff, on the other hand, argues that to impose the requirement of knowledge or knowability improperly infuses a negligence standard into strict liability in contravention of the

---

[5] In relevant part, the instruction provides: "A product is defective if the use of the product in a manner that is reasonably foreseeable by the defendant involves a substantial danger that would not be readily recognized by the ordinary user of the product and the manufacturer fails to give adequate warning of such danger. . . . [¶] A manufacturer has a duty to provide an adequate warning to the consumer of a product of potential risks or side effects which are known, or [in the exercise of reasonable care] should have been known, which may follow the foreseeable use of the product." The use note accompanying the instruction questions the propriety of the bracketed phrase after our decision in *Finn* v. *G. D. Searle & Co.* (1984) 35 Cal.3d 691 [200 Cal.Rptr. 870, 677 P.2d 1147], and leaves it to the trial judge to determine whether the phrase should be used.

[6] Defendants also sought review of the trial court's ruling that the evidence did not support the defense verdict. In our order designating the issue for review, we implicitly concluded that this factually specific determination did not warrant review.

principles set out in our decisions from *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049] to *Brown* v. *Superior Court* (1988) 44 Cal.3d 1049 [245 Cal.Rptr. 412, 751 P.2d 470]. Plaintiff also urges that, although some courts have assumed that knowledge or knowability is a condition of strict liability for failure to warn, the issue has not been definitively resolved in this court.

## DISCUSSION

*General Principles of Strict Liability.*

■ *Greenman* v. *Yuba Power Products, Inc., supra*, 59 Cal.2d 57, established the doctrine of strict liability in California: "[a] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." (*Id.* at p. 62.) "The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." (*Id.* at p. 63; *Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121, 133 [104 Cal.Rptr. 433, 501 P.2d 1153] (hereafter *Cronin*).) The strict liability doctrine achieves its goals by "reliev[ing] an injured plaintiff of many of the onerous evidentiary burdens inherent in a negligence cause of action." (*Barker, supra*, 20 Cal.3d 413, 431; *Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112, 119 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036]; *Cronin, supra*, at p. 133.) In *Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168], we extended the doctrine to distributors of defective products.

■ Strict liability, however, was never intended to make the manufacturer or distributor of a product its insurer. "From its inception, . . . strict liability has never been, and is not now, *absolute* liability. . . . [U]nder strict liability the manufacturer does not thereby become the insurer of the safety of the product's user. [Citations.]" (*Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725, 733 [144 Cal.Rptr. 380, 575 P.2d 1162], italics in original.) We expressed the same concern in *Barker,* noting that *Barker*'s test for defective design subjected a manufacturer to liability "while stopping short of making the manufacturer an insurer for all injuries which may result from the use of its product." (*Barker, supra*, 20 Cal.3d at p. 432; see also *Brown* v. *Superior Court, supra*, 44 Cal.3d 1049, 1066; *Vermeulen* v. *Superior Court, supra*, 204 Cal.App.3d 1192, 1206; *Oakes* v. *E. I. Du Pont de Nemours & Co., Inc.* (1969) 272 Cal.App.2d 645, 650-651 [77 Cal.Rptr. 709].)

Strict liability has been invoked for three types of defects—manufacturing defects, design defects, and "warning defects," i.e., inadequate warnings or failures to warn. ■ In *Barker, supra*, 20 Cal.3d 413, we set out two alternative tests for identifying a design defect: first, whether the product performed as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner and, second, whether on balance the benefits of the challenged design outweighed the risk of danger inherent in the design. In *Barker* we also noted the third type of defect, inadequacy of warning, but did not address the issue since it was not relevant to the issues on appeal.

■ We recently reviewed and further refined the principles of strict liability in *Brown* v. *Superior Court, supra*, 44 Cal.3d 1049, 1069, where we concluded that a manufacturer of prescription drugs is exempt from strict liability for defects in design and is not strictly liable for injuries caused by scientifically unknowable dangerous propensities in prescription drugs.

Our cases to date have focused principally on the concept of "design defect," concededly one of the most difficult areas for precise definition. (*Barker, supra*, 20 Cal.3d at p. 429; see also Traynor, *The Ways and Meanings of Defective Products and Strict Liability* (1965) 32 Tenn. L.Rev. 363; Wade, *On the Nature of Strict Tort Liability for Products* (1973) 44 Miss. L.J. 825, 838-839; Prosser & Keeton on Torts (5th ed. 1984) § 99, pp. 700-702.) In California, as elsewhere, when not compelled by statute, the doctrine's acceptance and the terms of its applicability have been determined to a large extent by the fundamental policies which underlie it, as set out in *Greenman* v. *Yuba Power Products, Inc., supra*, 59 Cal.2d 57, and its progeny. Our task in the case before us is to shape the doctrine insofar as it is applicable to a product whose *only* defect may be that the manufacturer or distributor failed to warn of inherent dangers.[7]

*Failure-to-warn Theory of Strict Liability.*

Though not without some history in this court, the theory of strict liability for failure to warn has been forged principally in the lower courts. *Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 52-53 [46 Cal.Rptr. 552], was the first case in California to recognize that strict liability can be based on the absence of a warning which creates an unreasonable risk to the consumer. Drawing on the Restatement Second of Torts section 402A, comment j,[8] *Canifax* held that "a product, although

---

[7] In most instances, as here, the plaintiff alleges both design and warning defects. The jury in this case found no design defect. Pursuant to the new trial order, however, that issue may be retried.

[8] Comment j of section 402A of the Restatement Second of Torts, provides in pertinent part: "j. *Directions or warning.* In order to prevent the product from being unreasonably

faultlessly made, may nevertheless be deemed 'defective' under the rule and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warning is given." (237 Cal.App.2d at p. 53.) In *Canifax*, a wholesaler of dynamite fuse had failed to give warning of the burning time of the fuse.

In *Cavers* v. *Cushman Motor Sales, Inc.* (1979) 95 Cal.App.3d 338 [157 Cal.Rptr. 142], the first case in which failure to warn was the sole theory of liability, the appellate court approved the instruction that a golf cart, otherwise properly manufactured, could be defective if no warning was given of the cart's propensity to tip over when turning and if the absence of the warning rendered the product substantially dangerous to the user. *Cavers* was principally concerned with the propriety of the term "substantially dangerous" and concluded that it is necessary to weigh the degree of danger involved when determining whether a warning defect exists. The standard suggested in *Cavers* to govern this weighing process was similar to that provided for the jury's risk/benefit analysis in *Barker* (*supra*, 20 Cal.3d at p. 431).[9] *Cavers* also held by implication that the requirement of giving warnings was not limited to unavoidably dangerous or unsafe products, a rule later stated expressly in *Gonzales* v. *Carmenita Ford Truck Sales, Inc.* (1987) 192 Cal.App.3d 1143 [238 Cal.Rptr. 18], where the plaintiff's injuries resulted from a manufacturer's failure to give warnings about the need, frequency, and method of adjusting air brakes.

Between *Canifax* and *Gonzales*, a number of cases recognized that a failure to give adequate warnings might subject a manufacturer or distributor to *strict liability* when it knew or should have known of the danger and the necessity of warnings to ensure safe use. (*Rosburg* v. *Minnesota Mining & Mfg. Co.* (1986) 181 Cal.App.3d 726, 734 [226 Cal.Rptr. 299] [breast implant]; *Blackwell* v. *Phelps Dodge Corp.* (1984) 157 Cal.App.3d 372, 377 [203 Cal.Rptr. 706] [tank car]; *Lunghi* v. *Clark Equipment Co.* (1984) 153

---

dangerous, the seller may be required to give directions or warning, on the container, as to its use. . . . Where . . . the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if [the seller] has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger . . . ."

[9] In adapting the principles of *Barker* to a failure-to-warn case, the *Cavers* court stated, "In assisting the jury's determination of whether the absence of a warning makes a product defective, the trial court should focus their attention on such relevant considerations as the normal *expectations of the consumer* as to how the product will perform, degrees of simplicity or complication in the operation or use of the product, the nature and magnitude of the danger to which the user is exposed, the likelihood of injury, and the feasibility and beneficial effect of including a warning." (95 Cal.App.3d at pp. 347-348.)

Cal.App.3d 485, 493-494 [200 Cal.Rptr. 387] [front-end loader]; *DeLeon* v. *Commercial Manufacturing & Supply Co.* (1983) 148 Cal.App.3d 336, 343 [195 Cal.Rptr. 867] [cannery bin]; *Garman* v. *Magic Chef, Inc.* (1981) 117 Cal.App.3d 634, 638 [173 Cal.Rptr. 20] [gas stove]; *Burke* v. *Almaden Vineyards, Inc.* (1978) 86 Cal.App.3d 768, 772 [150 Cal.Rptr. 419] [plastic cork]; *Midgley* v. *S.S. Kresge Co.* (1976) 55 Cal.App.3d 67, 71-75 [127 Cal.Rptr. 217] [telescope]; *Dosier* v. *Wilcox-Crittendon Co.* (1975) 45 Cal.App.3d 74 [119 Cal.Rptr. 135] ["hook" device]; *Barth* v. *B. F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228, 244-245 [71 Cal.Rptr. 306] [tire]; *Casetta* v. *United States Rubber Co.* (1968) 260 Cal.App.2d 792, 816-818 [67 Cal.Rptr. 645] [tire]; see 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 1265-1270, pp. 707-715.)

These cases did not address the specific factual question whether or not the manufacturer or distributor knew or should have known of the risks involved in the products, either because the nature of the product or the risk involved made such a discussion unnecessary or because the plaintiff limited the action to risks about which the manufacturer/distributor obviously knew or should have known. Moreover, the appellate courts in these same cases did not discuss knowledge or knowability as a component of the failure to warn theory of strict liability. However, a knowledge or knowability component clearly was included as an implicit condition of strict liability. In that regard, California was in accord with authorities in a majority of other states.[10]

Only when the danger to be warned against was "unknowable" did the knowledge component of the failure-to-warn theory come into focus. Such cases made it apparent that eliminating the knowledge component had the effect of turning strict liability into absolute liability. The first California case to discuss knowledge or knowability as a condition of strict liability in the failure to warn context was *Oakes* v. *E. I. Du Pont de Nemours & Co., Inc., supra,* 272 Cal.App.2d 645. Du Pont had distributed weed-killing spray products containing ingredients that proved dangerous to some

---

[10]See Annotation, Strict Products Liability: Liability for Failure to Warn as Dependent on Defendant's Knowledge of Danger (1984) 33 A.L.R.4th 368; Proposed Uniform Product Liability Act (1979) Department of Commerce, 44 Federal Register 62714, 72724, 67774.

Only a small minority of jurisdictions have rejected the proposal of the Restatement Second of Torts that knowledge or knowability is a condition of strict liability. The minority hold that the reason for failing to warn is irrelevant to imposition of strict liability. (*Halphen* v. *Johns-Manville Sales Corp.* (La. 1986) 484 So.2d 110, 114; *Elmore* v. *Owens-Illinois, Inc.* (Mo. 1984) 673 S.W.2d 434, 438; *Beshada* v. *Johns-Manville Products Corp.* (1982) 90 N.J. 191 [447 A.2d 539, 546, 33 A.L.R.4th 353] [reasoning later rejected in *Feldman* v. *Lederle Laboratories* (1984) 97 N.J. 429 (479 A.2d 374); *Carrecter* v. *Colson Equipment Co.* (1985) 346 Pa.Super. 95 [499 A.2d 326, 330-331]; *Little* v. *PPG Industries, Inc.* (1978) 19 Wn.App. 812 [579 P.2d 940, 946]; *Haugen* v. *Minnesota Mining and Manufacturing Co.* (1976) 15 Wn.App. 379 [550 P.2d 71, 76-77].)

human beings. Accepting the premise that knowledge or knowability was a factor in the obligation to warn under the Restatement Second of Torts (§ 402A, com. j.), the court stated: "The rationale of the strict liability rule is that the injured person is helpless to protect himself from the *actually defective product*. It is only reasonable therefore that as between the injured user and the one who places the product on the market the latter should bear the loss. The same rationale would apply to the marketing of a product which contains an ingredient which the manufacturer knows or should know 'by the application of reasonable developed human skill and foresight' is dangerous. But, in the view of this court, that is where the reason for the rule ceases and the rule of 'strict' liability itself should stop. To exact an obligation to warn the user of unknown and unknowable allergies, sensitivities and idiosyncrasies would be for the courts to recast the manufacturer in the role of an insurer beyond any reasonable application of the rationale expressed above." (272 Cal.App.2d at pp. 650-651.)

In *Christofferson* v. *Kaiser Foundation Hospitals* (1971) 15 Cal.App.3d 75 [92 Cal.Rptr. 825, 53 A.L.R.3d 292], the trial court had instructed that the manufacturer of a prescription drug was strictly liable for failure to warn of side effects which should or could have been foreseen, but had refused to instruct on liability for unforeseeable side effects. The Court of Appeal affirmed.

When the issue of "unknowable" risks first came before us, we noted the issue without deciding it. (*Finn* v. *G. D. Searle & Co., supra*, 35 Cal.3d 691 (hereafter *Finn*).) In *Finn*, we observed that the decisions in other states had developed two lines of cases: "one imposes strict liability for a failure to warn regardless of defendant's knowledge or ability to know of the side-effect-causing injury . . . , and one focuses first on the manufacturer's actual or constructive knowledge." (*Id.* at p. 699.) In *Finn* we did not decide the issue because the plaintiff expressly argued that the defendant drug manufacturer's duty to warn extended only to effects which were or should have been known. Consistent with the plaintiff's argument, the trial court had given jury instructions regarding the reasonableness of the manufacturer's conduct in failing to warn, rather than on strict liability.[11]

*Finn* involved prescription drugs, as did our next important case on the issue of strict liability, *Brown* v. *Superior Court, supra*, 44 Cal.3d 1049 (hereafter *Brown*). In *Brown*, we held that prescription drug manufacturers

---

[11] The dissent in *Finn* was the only support in California, prior to the instant case, for extending strict liability to the failure to warn of unknowable risks. The dissent acknowledged that the state of the law was otherwise, but proposed that strict liability in California should not be conditioned upon the manufacturer's having knowledge or reason to know of the danger. (*Finn, supra*, 35 Cal.3d at p. 723, dis. opn. of Bird, C. J.)

are exempt from strict liability for design defects—we refused to apply the standards for defective design set out in *Barker* (*supra*, 20 Cal.3d 413). The procedural posture of *Brown* as the case reached this court required us to address that question and, in addition, the plaintiff's contention that a manufacturer's *strict liability* for failure to warn should extend to "unknowable" risks of harm. The trial court had ruled before trial that the defendants could not be held strictly liable for an alleged design defect in the drug at issue but could be held strictly liable for their failure to warn of the drug's known or knowable side effects. This pretrial ruling in *Brown*, insofar as it recognized strict liability for failure to warn of known or knowable side effects, was not questioned by the plaintiff on appeal. Instead, the plaintiff wanted the appellate court to extend the ruling to "unknowable" risks. The Court of Appeal affirmed the trial court's ruling. We did the same.

Discussing the issue that was before us in *Brown*—liability for failure to warn of "unknowable" risks—we reviewed the authorities on the issue whether strict liability for failure to warn presupposes actual or constructive knowledge of the risk by the manufacturer. We noted the split of authority and that California precedent favors the majority view, which requires knowability.[12] Then, applying the policy principles that had prompted the court to exempt prescription drugs from the *Barker* tests for defective design, we refused to extend strict liability to the failure to warn of risks that were unknowable at the time of distribution. As we stated, if a manufacturer could not count on limiting its liability to risks that were known or knowable at the time of manufacture or distribution, it would be discouraged from developing new and improved products for fear that later significant advances in scientific knowledge would increase its liability. (*Brown, supra*, 44 Cal.3d at p. 1066.) We concluded, "in accord with almost all our sister states that have considered the issue," that a manufacturer is not strictly liable for injuries caused by a prescription drug so long as it was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution. Our decision did not affect the continued validity of the trial court's pretrial ruling regarding liability for known and knowable risks, a reading confirmed by the caveat contained in footnote 12 of the opinion: "Our conclusion does not mean, of course, that drug manufacturers are free of all liability for defective drugs. They are subject to liability for

[12] We observed in *Brown* that most jurisdictions and the Restatement Second of Torts condition liability on actual or constructive knowledge of the risks by the manufacturer at the time of sale or distribution. (44 Cal.3d at 1065.) The string of supporting citations included nondrug as well as drug cases. We also quoted from *Woodill* v. *Parke Davis & Co.* (1980) 79 Ill.2d 26 [37 Ill.Dec. 304, 402 N.E.2d 194, 199]: "[T]o hold the manufacturer liable for failure to warn of a danger of which it would be impossible to know based on the present state of human knowledge would make the manufacturer the virtual insurer of the product. . . ."

manufacturing defects, as well as under general principles of negligence, *and* for failure to warn of known or reasonably knowable side effects." (*Id.* at p. 1069, italics added.)

*Vermeulen* v. *Superior Court* (*supra*, 204 Cal.App.3d 1192) and the instant case disagree on the effect of the *Brown* holding (*supra*, 44 Cal.3d 1049) and whether the case has any application beyond the limitations of its factual setting, i.e., prescription drugs. Obviously, the holding applies only to prescription drugs. However, *Brown*'s logic and common sense are not limited to drugs. In recognizing the extent to which the majority rule pervades California precedents in both drug and nondrug cases, *Brown* clearly implied that knowledge is also a component of strict liability for failure to warn in cases other than prescription drug cases.

 In sum, the foregoing review of the decisions of the Courts of Appeal persuades us that California is well settled into the majority view that knowledge, actual or constructive, is a requisite for strict liability for failure to warn and that *Brown, supra*, 44 Cal.3d 1049, if not directly, at least by implication, reaffirms that position.

However, even if we are implying too much from the language in *Brown* (*supra*, 44 Cal.3d 1049), the fact remains that we are now squarely faced with the issue of knowledge and knowability in strict liability for failure to warn in other than the drug context. Whatever the ambiguity of *Brown*, we hereby adopt the requirement, as propounded by the Restatement Second of Torts and acknowledged by the lower courts of this state and the majority of jurisdictions, that knowledge or knowability is a component of strict liability for failure to warn.

One of the guiding principles of the strict liability doctrine was to relieve a plaintiff of the evidentiary burdens inherent in a negligence cause of action. (*Cronin, supra*, 8 Cal.3d at p. 133.) Indeed, it was the limitations of negligence theories that prompted the development and expansion of the doctrine. The proponents of the minority rule, including the Court of Appeal in this case, argue that the knowability requirement, and admission of state-of-the-art evidence, improperly infuse negligence concepts into strict liability cases by directing the trier of fact's attention to the conduct of the manufacturer or distributor rather than to the condition of the product. Similar claims have been made as to other aspects of strict liability, sometimes resulting in limitations on the doctrine and sometimes not. In *Cronin*, for example, we concluded that the "unreasonably dangerous" element, which the Restatement Second of Torts had introduced into the definition of a defective product, should not be incorporated into a plaintiff's burden of proof in a product liability action because it "rings of negligence"

(8 Cal.3d at pp. 132-133). Another indication of the concern to eliminate negligence principles is the question raised by the Committee on Standard Jury Instructions regarding the phrase "in the exercise of reasonable care" in the standard instruction on strict liability for failure to warn. (See Use Note, BAJI No. 9.00.7 ["Some members believe that such phrase introduces an element of negligence into a strict liability case."].)

However, the claim that a particular component "rings of" or "sounds in" negligence has not precluded its acceptance in the context of strict liability. ■ On the same day that we decided *Cronin*, for example, we also held that, while ordinary contributory negligence does not bar recovery in strict liability, the plaintiff's negligence is a defense when it consists of assumption of the risk. (*Luque* v. *McLean* (1972) 8 Cal.3d 136, 145 [104 Cal.Rptr. 443, 501 P.2d 1163]; Rest.2d Torts, *supra*, § 402A, com. b.) In *Cavers* v. *Cushman Motor Sales, supra*, 95 Cal.App.3d 338, 348-349, as noted above (*ante*, p. 996), the Court of Appeal refused to eliminate the plaintiff's burden to prove that the manufacturer's failure to warn rendered the golf cart "substantially dangerous" to the user, rejecting the claim that the phrase "substantially dangerous," like the phrase "unreasonably dangerous" in *Cronin* (*supra*, 8 Cal.3d at p. 132), impermissibly increased the plaintiff's burden to prove the product defective. (7) We had also concluded, in *Daly* v. *General Motors Corp., supra*, 20 Cal.3d 725, that the principles of comparative negligence apply to actions founded on strict products liability. We recognized that the doctrine of strict liability was a judicial creation and, in reaching our conclusion, we blended or accommodated the "theoretical and semantic distinctions between the twin principles of strict products liability and traditional negligence." (*Id*. at p. 734.)

■ Finally, in *Barker, supra*, 20 Cal.3d 413, this court rejected the claim that the risk/benefit test was unacceptable because it introduced an element which "rings of negligence" into the determination of design defect. Consequently, we held that the risk/benefit test was not inconsistent with our decision in *Cronin, supra*, 8 Cal.3d 121. The risk/benefit test directs the jury to weigh or balance a number of factors and sets out a list of competing considerations for the jury to evaluate in determining the existence of a design defect. We noted that, by shifting the burden of proof to the manufacturer, the risk/benefit standard "should lighten the plaintiff's burden in conformity with our *Greenman* and *Cronin* decisions." Furthermore, we added that an instruction advising the jury to weigh benefits and risks "is not simply the equivalent of an instruction which requires the jury to determine whether the manufacturer was negligent in designing the product [citation]. It is true, of course, that in many cases proof that a product is defective in design may also demonstrate that the manufacturer was negligent in choosing such a design. As we have indicated, however, in a strict

liability case, as contrasted with a negligent design action, the jury's focus is properly directed to the condition of the product itself, and not to the reasonableness of the manufacturer's conduct." (20 Cal.3d at p. 434.)

■ As these cases illustrate, the strict liability doctrine has incorporated some well-settled rules from the law of negligence and has survived judicial challenges asserting that such incorporation violates the fundamental principles of the doctrine. It may also be true that the "warning defect" theory is "rooted in negligence" to a greater extent than are the manufacturing—or design-defect theories. The "warning defect" relates to a failure extraneous to the product itself. Thus, while a manufacturing or design defect *can be* evaluated without reference to the conduct of the manufacturer (see *Barker, supra*, 20 Cal.3d 413), the giving of a warning cannot. The latter necessarily requires the communicating of something to someone. How can one warn of something that is unknowable? If every product that has no warning were defective per se and for that reason subject to strict liability, the mere fact of injury by an unlabelled product would automatically permit recovery. That is not, and has never been, the purpose and goal of the failure-to-warn theory of strict liability. Further, if a warning automatically precluded liability in every case, a manufacturer or distributor could easily escape liability with overly broad, and thus practically useless, warnings. (See *Finn, supra*, 35 Cal.3d at p. 701.)

We therefore reject the contention that every reference to a feature shared with theories of negligence can serve to defeat limitations on the doctrine of strict liability. ■ Furthermore, despite its roots in negligence, failure to warn in strict liability differs markedly from failure to warn in the negligence context. Negligence law in a failure-to-warn case requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about. Strict liability is not concerned with the standard of due care or the reasonableness of a manufacturer's conduct. The rules of strict liability require a plaintiff to prove only that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.[13] Thus, in strict liability, as opposed

---

[13] The parties do not dispute the accepted definition of scienter in the failure to warn context, namely, actual or constructive knowledge. As noted in comment j of section 402A of the Restatement Second of Torts (see *ante*, pp. 995-996, fn. 8), constructive knowledge is knowledge which is obtainable "by the application of reasonable, developed human skill and foresight." As we have explained, however, the element of scienter is not necessarily determinative of the duty to warn or of the liability that flows from the failure to warn. Thus, a manufacturer with knowledge, actual or constructive, might have acted reasonably in failing to

to negligence, the reasonableness of the defendant's failure to warn is immaterial.

Stated another way, a reasonably prudent manufacturer might reasonably decide that the risk of harm was such as not to require a warning as, for example, if the manufacturer's own testing showed a result contrary to that of others in the scientific community. Such a manufacturer might escape liability under negligence principles. In contrast, under strict liability principles the manufacturer has no such leeway; the manufacturer is liable if it failed to give warning of dangers that were known to the scientific community at the time it manufactured or distributed the product. Whatever may be reasonable from the point of view of the manufacturer, the user of the product must be given the option either to refrain from using the product at all or to use it in such a way as to minimize the degree of danger. *Davis* v. *Wyeth Laboratories, Inc.* (9th Cir. 1968) 399 F.2d 121, 129-130, described the need to warn in order to provide "true choice": "When, in a particular case, the risk qualitatively (e.g., of death or major disability) as well as quantitatively, on balance with the end sought to be achieved, is such as to call for a true choice judgment, medical or personal, the warning must be given. [Fn. omitted.]" (See also *Finn, supra,* 35 Cal.3d at pp. 699-700, on the kinds of warnings and their implications.) Thus, the fact that a manufacturer acted as a reasonably prudent manufacturer in deciding not to warn, while perhaps absolving the manufacturer of liability under the negligence theory, will not preclude liability under strict liability principles if the trier of fact concludes that, based on the information scientifically available to the manufacturer, the manufacturer's failure to warn rendered the product unsafe to its users.

■ The foregoing examination of the failure-to-warn theory of strict liability in California compels the conclusion that knowability is relevant to imposition of liability under that theory. Our conclusion not only accords with precedent but also with the considerations of policy that underlie the doctrine of strict liability.

We recognize that an important goal of strict liability is to spread the risks and costs of injury to those most able to bear them.[14] However, it was

---

warn and might escape liability for negligence; the manufacturer's reasonable conduct, however, would not relieve the manufacturer of liability on a strict liability theory.

[14] The suggestion that losses arising from unknowable risks and hazards should be spread among all users to the product, as are losses from predictable injuries or negligent conduct, is generally regarded as not feasible. Not the least of the problems is insurability. (See Henderson, *Coping with Time Dimension in Products Liability* (1981) 69 Cal.L.Rev. 919, 948-949; Wade, *On the Effect in Product Liability of Knowledge Unavailable Prior to Marketing* (1983) 58 N.Y.U. L.Rev. 734.) Dean Wade stated the dilemma, but provided no solution: "How does one spread the potential loss of an unknowable hazard? How can insurance premiums

never the intention of the drafters of the doctrine to make the manufacturer or distributor the insurer of the safety of their products. It was never their intention to impose *absolute* liability.

## CONCLUSION

Therefore, in answer to the question raised in our order granting review, a defendant in a strict products liability action based upon an alleged failure to warn of a risk of harm may present evidence of the state of the art, i.e., evidence that the particular risk was neither known nor knowable by the application of scientific knowledge available at the time of manufacture and/or distribution. The judgment of the Court of Appeal is affirmed with directions that the matter be remanded to the trial court for proceedings in accord with our decision herein.

Lucas, C. J., Kennard, J., Arabian, J., and Baxter, J., concurred.

**BROUSSARD, J.,** Concurring.—I concur in the majority opinion, but write separately simply to emphasize the narrow scope of the opinion's holding. As the majority opinion properly recognizes, the issue presented by this case is whether so-called "state-of-the-art" evidence is admissible in a strict products liability action *when the plaintiff contends that a product is defective because it failed to contain an adequate warning of the risk that caused the injury*. I agree with the majority that when the plaintiff proceeds *on an absence-of-warning theory*, the defendant is entitled to present evidence that the risk in question was scientifically unknown at the time the product was manufactured and distributed. A warning, by its nature, presupposes that the risk to be warned against is capable of being known, and a rule which permits the trier of fact to find a product defective simply because it lacked a warning of a scientifically unknown risk would go a long way to making a manufacturer an insurer of any injuries caused by its product.

The majority's holding in this case, however, does not mean that state-of-the-art evidence is admissible in all strict products liability cases. Although the majority finds no need to reach the issue here (see maj. opn., *ante,* p. 992, fn. 2), in my view it is both prudent and appropriate to make it clear that state-of-the-art evidence would not necessarily be relevant when, for example, a plaintiff in a strict products liability action relies solely on the so-

be figured for this purpose? Indeed, will insurance be available at all? Spreading the loss is essentially a compensation device rather than a tort concept. Providing compensation should not be the sole basis for imposing tort liability, and this seems more emphatically so in the situation where the defendant is no more able to insure against unknown risks than is the plaintiff." (58 N.Y.U. L.Rev. at p. 755.)

called "consumer expectation" prong of the design defect standard. (See, e.g., *Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 429-430 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1].)

As *Barker* explained, the consumer expectation prong is "somewhat analogous to the Uniform Commercial Code's warranty of fitness and merchantability . . . [and] reflects the warranty heritage upon which California product liability doctrine in part rests. As we noted in *Greenman* [v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 (27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049)], 'implicit in [a product's] presence on the market . . . [is] a representation that it [will] safely do the jobs for which it was built.' (59 Cal.2d at p. 64.) *When a product fails to satisfy such ordinary consumer expectations as to safety in its intended or reasonably foreseeable operation, a manufacturer is strictly liable for resulting injuries.*" (*Barker* v. *Lull Engineering Co., supra,* 20 Cal.3d 413, 429-430, italics added.)

Under the consumer expectation standard, when a product proves to be unexpectedly unsafe when used as intended by the manufacturer, an injured plaintiff is entitled to recover for the resulting injuries, as he or she would recover in a warranty action, without regard to whether the manufacturer knew or could have known at the time of manufacture or distribution of the specific safety problem that was inherent in its product. (See, e.g., *West* v. *Johnson & Johnson Products, Inc.* (1985) 174 Cal.App.3d 831, 852-858, 863-867 [220 Cal.Rptr. 437] [in a strict products liability action brought by a plaintiff who developed toxic shock syndrome from the ordinary use of a tampon, because the plaintiff proceeded only under the consumer expectation theory the trial court did not err in refusing to give an instruction, requested by the defendant, which would have informed the jury that the defendant had no duty to warn of unknown or unknowable dangers]. See also *Johnson* v. *Raybestos-Manhattan, Inc.* (1987) 69 Hawaii 287 [740 P.2d 548, 549]; *Ontai* v. *Straub Clinic and Hosp. Inc.* (1983) 66 Hawaii 237 [659 P.2d 734, 744-745].) Thus, when the plaintiff in a strict products liability action relies solely on a consumer expectation theory, state-of-the-art evidence may not be relevant or admissible.

In this case, however, plaintiff sought to rely, inter alia, on the absence of a warning to prove that the product was defective. Under these circumstances, I agree with the majority that state-of-the-art evidence was admissible.

**MOSK, J.,** Concurring and Dissenting.—In my view the trial court properly granted a new trial and the Court of Appeal, in a thoughtful analysis of the law, correctly affirmed the order. I thus concur in the result.

I must express my apprehension, however, that we are once again retreating from "[t]he pure concepts of products liability so pridefully fashioned and nurtured by this court." (*Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725, 757 [144 Cal.Rptr. 380, 575 P.2d 1162] (dis. opn. by Mosk, J.).)

In *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049], this court "heroically took the lead in originating the doctrine of products liability." (*Daly* v. *General Motors Corp.*, *supra*, 20 Cal.3d at p. 757 (dis. opn. by Mosk, J.).) We did so in the belief that such liability was essential to ensure that the costs of injuries caused by defective products are borne by the manufacturers that put such products on the market and profit therefrom rather than by the victims of those injuries, who are largely powerless to protect themselves. (*Greenman* v. *Yuba Power Products, Inc.*, *supra*, 59 Cal.2d at p. 63.) The basic principle underlying products liability actions is that "the trier of fact must focus on the *product*, not on the *manufacturer's conduct*, and that the plaintiff need not prove that the manufacturer acted unreasonably or negligently in order to prevail in such an action." (*Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 418 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1].)

This focus, however, has become blurred through the years. As the majority observe, this court has incorporated a number of principles of the law of negligence into strict liability doctrine. (See, e.g., *Luque* v. *McLean* (1972) 8 Cal.3d 136, 145 [104 Cal.Rptr. 443, 501 P.2d 1163] [assumption of risk defense]; *Daly* v. *General Motors Corp.*, *supra*, 20 Cal.3d 725, 736-737 [comparative negligence]; *Barker* v. *Lull Engineering Co.*, *supra*, 20 Cal.3d 413, 432 [risk-benefit test]; *Brown* v. *Superior Court* (1988) 44 Cal.3d 1049, 1066 [245 Cal.Rptr. 412, 751 P.2d 470] [as a matter of policy, strict liability standards not applicable to prescription drug manufacturers].) Nevertheless, our past acquiescence in this muddled state of affairs does not justify making matters worse. Misconception compounded cannot result in authenticity.

In no area of strict products liability has the impact of principles of negligence become more pronounced than in failure-to-warn cases. From the inception of the cause of action for strict liability on the theory of failure to warn, courts have impliedly or explicitly held that there can be no liability unless the plaintiff establishes that the defendant knew or should have known of the risk. For example, in *Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 53 [46 Cal.Rptr. 552], the court declared that a product may be defective "and subject the supplier thereof to strict liability if *it is unreasonably dangerous* to place the product in the hands of a user without a suitable warning and the product is supplied and no warning is

given." (Italics added.) In *Barth* v. *B. F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228, 244 [71 Cal.Rptr. 306], the court held that in cases in which there is evidence that the defendant knew of a danger but failed to warn, " 'A manufacturer, as well as a dealer, must give adequate warning to the ultimate users of the product of any dangerous propensity which it knows or should have known would result in the type of accident that occurred.' " Finally, in *Oakes* v. *E. I. Du Pont de Nemours* (1969) 272 Cal.App.2d 645, 651 [77 Cal.Rptr. 709], the court held that "knowledge, actual or constructive, being a necessary element to the tort liability contended, both pleading and proof of that element were plaintiff's burden."

The courts of some of our sister states, too, have permitted the infusion of negligence concepts into failure-to-warn strict liability actions. (See, e.g., *Gonzales* v. *Volvo of America Corp.* (7th Cir. 1985) 752 F.2d 295, 300 [language and concepts of reasonableness in strict liability failure-to-warn cases under Indiana law same as those used in negligence cases]; *Borel* v. *Fibreboard Paper Products Corporation* (5th Cir. 1973) 493 F.2d 1076, 1088 [same under Texas law]; *Bernier* v. *Raymark Industries, Inc.* (Me. 1986) 516 A.2d 534, 538 [reasonableness of defendant's conduct is a factor]; *Feldman* v. *Lederle Laboratories* (1984) 97 N.J. 429 [479 A.2d 374, 385] [same]; *Bilotta* v. *Kelley Co., Inc.* (Minn. 1984) 346 N.W.2d 616, 622 [strict liability failure-to-warn claims based on negligence concepts]; and see generally, Henderson & Twerski, *Doctrinal Collapse in Products Liability: The Empty Shell of Failure to Warn* (1990) 65 N.Y.U. L. Rev. 265, 271-273; Prosser & Keeton, The Law of Torts (1988 supp.) § 99, p. 95, fn. 21; Bromberg, *The Mischief of the Strict Liability Label in the Law of Warnings* (1987) 17 Seton Hall L. Rev. 526, 534-535.)

It may be contended, with arguable merit, that in failure-to-warn cases the line between strict liability and negligence is somewhat thin. The court in *Kearl* v. *Lederle Laboratories* (1985) 172 Cal.App.3d 812, 832 [218 Cal.Rptr. 453], disapproved on other grounds in *Brown* v. *Superior Court*, *supra*, 44 Cal.3d at pages 1068-1069, came to this conclusion: "the characteristic that distinguishes strict liability from negligence is proof of actual or constructive knowledge of risk: In a negligence action we focus on the defendant's conduct and require plaintiff to show defendant acted unreasonably in light of a known or constructively known risk. In strict liability actions, on the other hand, we focus not on the reasonableness of a defendant's conduct but on the product, and we either ignore the question of a manufacturer's actual or constructive knowledge of risk (as in a 'consumer expectations' design defect case) or we in effect impute to the manufacturer defendant current scientific knowledge of the risk caused by his product (as in a risk/benefit design defect balancing case). [Citations.] But in all warning cases—even if the plaintiff or the court claims to analyze failure to warn

or inadequacy of warning in the context of a strict products liability claim—the tests actually applied condition imposition of liability on the defendant's having actually or constructively known of the risk that triggers the warning."

The majority distinguish failure-to-warn strict liability claims from negligence claims on the ground that strict liability is not concerned with a standard of due care or the reasonableness of a manufacturer's conduct. This is generally accurate. However in practice this is often a distinction without a substantial difference. Under either theory, imposition of liability is conditioned on the defendant's actual or constructive knowledge of the risk. Recovery will be allowed only if the defendant has such knowledge yet fails to warn.

The majority rely extensively on *Brown* v. *Superior Court, supra,* 44 Cal.3d 1049. They obviously fail to comprehend that *Brown* was based on a narrow public policy exception to strict products liability for prescription drugs, and for such drugs alone. We emphatically declared in *Brown* (at p. 1063) that "there is an important distinction between prescription drugs and other products," and we elaborated on the reason for the distinction: "Public policy favors the development and marketing of beneficial new drugs, even though some risks, perhaps serious ones, might accompany their introduction, because drugs can save lives and reduce pain and suffering." (*Ibid.*) We added that "the broader public interest in the availability of drugs at an affordable price must be considered in deciding the appropriate standard of liability for injuries resulting from their use." (*Ibid.*) The majority stretch the holding and the analysis in *Brown* beyond all recognition when they rely on that case in litigation involving products other than prescription drugs. They make the narrow exception swallow up fundamental law.

We should consider the possibility of holding that failure-to-warn actions lie solely on a negligence theory. "[A]lthough mixing negligence and strict liability concepts is often a game of semantics, the game has more than semantic impact—it breeds confusion and inevitably, bad law." (Henderson & Twerski, *Doctrinal Collapse in Products Liability: The Empty Shell of Failure to Warn, supra,* 65 N.Y.U. L. Rev. at p. 278.) If, however, the majority are not ready to take that step, I would still use this opportunity to enunciate a bright-line rule to apply in failure-to-warn strict liability actions.

Here plaintiff alleged, among other claims, that defendants marketed their products "with specific prior knowledge" of the high risks of injury and death from their use. If plaintiff can establish at the new trial that

defendants had *actual knowledge*, then state-of-the-art evidence—or what everyone else was doing at the time—would be irrelevant and the trial court could properly exclude it. Actual knowledge may often be difficult to prove, but it is not impossible with adequately probing discovery. Defendants, of course, can produce evidence that they had no such prior actual knowledge.

On the other hand, if plaintiff is only able to show, by medical and scientific data or other means, that defendants *should have known* of the risks inherent in their products, then contrary medical and scientific data and state-of-the-art evidence would be admissible if offered by defendants.

Thus I would draw a clear distinction in failure-to-warn cases between evidence that the defendants had actual knowledge of the dangers and evidence that the defendants should have known of the dangers.

With the foregoing rule in mind, the parties should proceed to the new trial ordered by the trial court and upheld by the Court of Appeal. Thus I would affirm the judgment of the Court of Appeal.