[No. B015483. Second Dist., Div. Three. June 22, 1987.]

JERONIMO GONZALES, Plaintiff and Appellant, v. CARMENITA FORD TRUCK SALES, INC., Defendant and Respondent.

COUNSEL

Silver, McWilliams, Stolpman, Mandel & Katzman, Donna Silver and Thomas G. Stolpman for Plaintiff and Appellant.

Bodkin, McCarthy, Sargent & Smith, Donna D. Melby and J. Thomas McCarthy for Defendant and Respondent.

OPINION

KLEIN, P. J.—Plaintiff and appellant Jeronimo Gonzales (Gonzales) appeals from a judgment in favor of defendant and respondent Carmenita Ford Truck Sales, Inc. (Carmenita).

Because the trial court committed prejudicial error in refusing to instruct on a failure-to-warn theory of strict products liability, we reverse.

### FACTUAL & PROCEDURAL BACKGROUND

In 1976, General Chemical Company (GCC), Gonzales's employer, purchased the subject Ford C800 truck from Carmenita. GCC is a supplier of chemicals, and owned the one three-axle truck in issue, in addition to a two-axle truck and a pickup truck. GCC did not employ a truck mechanic, but at all times relied on Carmenita to maintain and service said three-axle truck.

On December 1, 1978, the truck was serviced at Carmenita, and the brake shoes, linings and drums were replaced.

Gonzales first drove the truck in March 1979. On May 16, 1979, the truck was taken into Carmenita where a general lubrication service was performed. The following month and a day or two before the accident, Gonzales noticed a squealing sound emanating from one of the wheels and requested permission from GCC to have the truck inspected and serviced at Carmenita. Gonzales's foreman told him he could take care of the truck after he returned from an upcoming trip to Bakersfield.

On June 20, 1979, as Gonzales was descending on the freeway area commonly known as the Grapevine, the truck's brakes failed. Gonzales hit a number of other vehicles before crashing into the side of a hill. He sustained severe disabling injuries including multiple fractures and injuries to the head.

Gonzales filed suit on May 20, 1980, against various defendants, including Ford Motor Company, but proceeded to trial solely against Carmenita. Alleging causes of action for strict liability as well as negligence, Gonzales pleaded Carmenita (1) supplied a truck which was defective and unsafe for its intended use, and (2) was negligent in the service and maintenance of said truck.

The matter was tried before a jury. Gonzales presented experts who opined Carmenita failed to adjust the tag axle brakes when the extensive brake job was done on December 1, 1978. Carmenita presented evidence to the contrary.

The parties were in agreement that no brake adjustment was performed during the May 16, 1979, lubrication service, and that the brakes were out of adjustment at the time of the accident one month later. Gonzales maintained he requested a general service, including any necessary brake work, on May 16, 1979, and further, that Carmenita's mechanic should have noticed the brakes were out of adjustment. Carmenita's position was that only a general lubrication service was requested, and relied on the fact the work order merely provided for a "B" service, which does not include any brake service.

Carmenita attributed the accident to GCC's failure to maintain the truck properly and to Gonzales's inexperience as the driver of a truck equipped with air brakes. While Gonzales possessed an instruction permit, he did not have the license required to drive a three-axle truck. Cory Gray (Gray), a defense expert, testified the accident was caused by insufficient braking due to the out-of-adjustment condition of the brakes coupled with driver error. Said error consisted of excessive pumping of the brakes causing depletion of air in the brake system and failure to place the truck in a low enough gear at the top of the grade.

A defense verdict was returned on May 23, 1985. In a special verdict, the jurors found no defect in the brakes of the truck, which brakes were sold and installed on December 1, 1978, and found Carmenita not negligent. GCC's negligence was assessed at 80 percent, and Gonzales's at 20 percent. Gonzales's motions for new trial and for judgment notwithstanding the verdict were denied. This appeal followed.

## Contentions

Gonzales contends (1) the trial court erred in refusing to instruct on a failure-to-warn theory of strict products liability; (2) Gray's testimony at trial was contrary to his deposition testimony resulting in surprise, and was based on hearsay and a misleading demonstration; (3) there was juror misconduct; and (4) Hispanics and other minorities were systematically excluded from the jury.

## Discussion

*1. Trial court erred in refusing to instruct on the failure to warn theory.*

"Where a manufacturer or supplier of a product is or should have been aware that a product is unreasonably dangerous absent a warning and such warning is feasible, strict liability in tort will attach if appropriate and conspicuous warning is not given." (*Burke* v. *Almaden Vineyards, Inc.* (1978) 86 Cal.App.3d 768, 772 [150 Cal.Rptr. 419].)

Gonzales contends Carmenita failed at the time it sold the truck to provide adequate warnings relating to risks associated with air brakes being out of adjustment, failed to provide warnings as to how quickly the air brakes could come out of adjustment, and failed to provide warnings and proper instructions as to the proper method to ensure adjustment.

BAJI No. 9.00.7, Seventh edition 1986,[1] "Products Liability—Strict Liability in Tort—Failure to Warn," requested by Gonzales, and refused by the trial court, provides in relevant part: "A product is defective if the use of the product in a manner that is reasonably foreseeable by the defendant involves a substantial danger that would not be readily recognized by the ordinary user of the product and the manufacturer fails to give adequate warning of such danger."[2]

The pivotal question before us is whether the refusal to give the foregoing instruction was prejudicial error.

---

[1] All BAJI instructions referred to are from the seventh edition unless otherwise noted.

[2] A retailer's liability for personal injuries caused by a defective product is coextensive with that of the product's manufacturer. (*Midgley* v. *S. S. Kresge Co.* (1976) 55 Cal.App.3d 67, 71 [127 Cal.Rptr. 217].)

We note BAJI No. 9.00.7, the sole BAJI instruction on strict products liability based on failure to warn, refers to a *manufacturer's* failure to warn, while Carmenita is a retail dealer. However, the instruction was neither challenged nor refused on that basis. Had the trial court recognized the viability of the failure-to-warn theory, the instruction presumably would have been modified by substituting "retailer" for "manufacturer."

 "It is settled that each party to an action has a right to have the jury instructed on all of his theories of the case which are supported by the pleadings and the evidence. Refusal to give an instruction adequately covering a party's theory which is supported by substantial evidence is inherently prejudicial error. [Citations.] In deciding whether a trial court erred in refusing a requested instruction, the evidence should be viewed in a light most favorable to the appellant. [Citations.]" (*Ng* v. *Hudson* (1977) 75 Cal.App.3d 250, 254 [142 Cal.Rptr. 69].)

 Because there is substantial support in the record for Gonzales's theory that the truck was defective due to inadequate warnings with respect to air brakes, the trial court's refusal to instruct on that theory was prejudicial error.

a. *Summary of evidence supportive of the failure-to-warn theory.*

Gray testified that at the top of a long grade, if there is a question as to whether the brakes are out of adjustment, a driver should pull over and check the brakes. He also stated a single trip over the Grapevine is an "adverse condition" which would necessitate an inspection. Such inspection is performed by crawling under the truck and examining the angle between the push rod and the slack adjuster. Alternatively, adjustment can be determined by the number of inches of push rod travel.

In evidence was the truck's operator's manual. Its introduction states the manual will "provide important safety information." Spanning 120 pages, the manual appears to contain very specific detailed information with respect to the truck's operation and maintenance, including numerous diagrams and specifications.

Under "Instruments and Controls," it indicates *hydraulic brakes* are designed to be self-adjusting. A procedure for their adjustment follows, which directs driving in reverse about ten feet, applying and releasing the brakes, moving forward a short distance and repeating this maneuver four or five times.

As for the subject of *air brakes,* which comes next, the manual merely states they are not self-adjusting. Eighty-three pages later, near the back of the manual, under "Specifications and Capacities," appears a chart entitled "Air Brake Chamber Push Rod Adjustment." The chart contains headings for "Brake Chamber Type," "Maximum Travel" (range from 1⅜ to 2¼ inches) and "Readjustment Travel" (range from 1 to 1¼ inches).

Under "Routine Service," the manual states: "Check operation of brakes." Under *daily maintenance,* the manual enumerates inspection of

*only* (1) diesel engine fuel lines and connections; (2) carburetor air cleaner element; and (3) engine coolant level; but not the angle between push rod and slack adjuster.

The required maintenance services chart provides for inspection at each 24,000 miles or 24 months of "brake lines and linings; disc brake shoes, linings and piston boots, and torque backing plate bolts." A footnote states "[m]ore frequent intervals may be required under adverse conditions."

The general maintenance check list which follows provides: "Adjust brakes—all." Frequency of such a check is when "[i]nsufficient power [is] shown in loaded practice stop."

Gray testified on cross-examination that a lack of knowledge exists among truck operators of the method to determine the proper adjustment of air brakes, which are the type involved here; this is particularly true with respect to small truck operators who do not have their own mechanics on staff.

Gonzales's exhibit 102 is a two-page synopsis issued by the United States Department of Transportation in 1983 of a Society of Automotive Engineers paper entitled "The Importance of Maintaining Air Brake Adjustment." This document, like the truck's operator's manual, was submitted to the jury. The report concluded: the level of adjustment has a pronounced effect on air brake systems; the level must be closely controlled to avoid serious degradation in performance; significant numbers of trucks on the road have air brakes out of adjustment; nationwide, over 50 percent of all air brake vehicles have at least one brake out of adjustment, and approximately 25 percent of the vehicles have at least 40 percent of their brakes out of adjustment; approximately 30 percent of serious truck accidents investigated by the National Transportation Safety Board since 1969 were found to be caused by improper brake adjustment; and improving the adjustment situation would have a significant impact on truck safety.

We view the evidence in the light most favorable to Gonzales, as we must. (*Ng. v. Hudson, supra,* 75 Cal.App.3d at p. 254.) Beyond the chart of specifications for air brake chamber push rod adjustment, the truck's operator's manual contains no information on the procedure for conducting such an inspection. The paucity of information on this critical subject exists against a background of widespread lack of knowledge among truck operators as to the proper method of air brake adjustment. A reference in the operator's manual to brake inspection at 24 months or 24,000 miles, or more frequently under adverse conditions, does not appear to alert the reader of the need for inspection after a single rigorous trip.

This record could support a finding that there was a failure to warn with respect to the need, frequency and method of air brake adjustment. The refusal of BAJI No. 9.00.7 was therefore prejudicial error.

### 2. *Carmenita's arguments unavailing.*

Carmenita maintains the trial court's refusal to give BAJI No. 9.00.7 was proper, because (1) nothing in the record supports Gonzales's failure-to-warn theory, (2) no warning is required for a product that is not unreasonably dangerous, and (3) there is no duty to warn of a danger that is obvious to the user.

Having already disposed of the first ground, we now address the others.

#### a. *Warning required where it would be unreasonable to place product in user's hands without a warning.*

Carmenita relies on *Garman* v. *Magic Chef, Inc.* (1981) 117 Cal.App.3d 634 [173 Cal.Rptr. 20], which held "[a] failure to warn may create liability for harm caused by use of an *unreasonably dangerous* product." (*Id.,* at p. 638, italics added; accord *DeLeon* v. *Commercial Manufacturing & Supply Co.* (1983) 148 Cal.App.3d 336, 343 [195 Cal.Rptr. 867].) *Garman* held a manufacturer was not required to warn consumers to check for gas leaks in the home before lighting a stove's pilot because, inter alia, "[a] cook stove is not an 'unavoidably dangerous or unsafe product' within the meaning of the strict liability rule applicable to those engaged in *ultrahazardous activities*.[3] (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 798, p. 3095 et seq.)" (*Garman* v. *Magic Chef Inc., supra,* at p. 638, italics added.) Carmenita submits it had no duty to warn because likewise air brakes are not unavoidably dangerous or unsafe products.

It appears, however, that *Garman* is an inaccurate statement of the law. The *Garman* court cited two cases as the basis for its pronouncement: *Cavers* v. *Cushman Motor Sales, Inc.* (1979) 95 Cal.App.3d 338 [157 Cal.Rptr. 142] and *Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44 [46 Cal.Rptr. 552].

It was *Canifax* which, drawing on the Restatement, first recognized in California a third type of defect giving rise to strict products liability, not a defect in manufacture or in design, but a defect due to the absence of a

---

[3] Such activities include blasting with explosives in a populated area and fumigating with a deadly poison. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 803-804, pp. 3100-3101.)

warning which creates an unreasonable risk to the consumer. (*Id.,* at pp. 52-53; *Cavers* v. *Cushman, supra,* 95 Cal.App.3d at p. 343; see Rest.2d Torts, § 402A, com. *j.*) *Canifax* held "a product, although faultlessly made, may nevertheless be deemed 'defective' under the rule and subject the supplier thereof to strict liability *if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning* and the product is supplied and no warning is given." (*Canifax* v. *Hercules Powder Co., supra,* 237 Cal.App.2d at p. 53, italics added; accord *Barth* v. *B. F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228, 244-245 [71 Cal.Rptr. 306]; *Cavers* v. *Cushman Motor Sales Inc., supra,* at p. 343.)

In other words, contrary to *Garman,* the warning requirement is not limited to unreasonably or unavoidably dangerous products. Rather, directions or warnings are in order where reasonably required *to prevent the use of a product from becoming unreasonably dangerous.* It is the lack of such a warning which renders a product unreasonably dangerous and therefore defective. (*Barth* v. *B. F. Goodrich Tire Co., supra,* 265 Cal.App.2d at p. 244.)

Accordingly, in *Cavers* v. *Cushman Motor Sales, Inc., supra,* 95 Cal.App.3d at page 340, the trial court properly instructed the jury that a *golf cart,* otherwise properly manufactured, could be defective if no warning were given of the cart's propensity to tip over when turning, and the absence of the warning rendered the product substantially dangerous to the user. While a defense judgment was affirmed, *Cavers* implicitly recognized the warning requirement is not limited to unavoidably dangerous or unsafe products. (Compare *Garman* v. *Magic Chef, Inc., supra,* 117 Cal.App.3d at p. 638.)

Likewise, in *Barth* v. *B. F. Goodrich Tire Co., supra,* 265 Cal.App.2d at page 245, a failure to warn instruction was properly given where a *tire* manufacturer failed to warn that the normal use of an automobile with six passengers would result in a load in excess of the tires' maximum carrying capacity, leading to the tires' rupture.

We reject Carmenita's argument that because air brakes are not an unavoidably dangerous or unsafe product, as a matter of law, no warning was required.

b. *Contentions re obvious danger similarly fail.*

Strict liability for failure to warn does not attach if the dangerous propensity is either obvious or known to the injured person at the time the

product is used. (*Burke* v. *Almaden Vineyards, Inc., supra,* 86 Cal.App.3d at p. 772.)

Carmenita argues BAJI No. 9.00.7 was properly refused because the danger was obvious to the user. There is substantial evidence in the record to the contrary. As set forth above, Gray testified there is a lack of knowledge among many truckers regarding the proper adjustment of air brakes.

Carmenita also urges "the absence of a warning to an ordinary truck driver who continues driving a truck after he experiences problems with the brakes" does not make the brakes unreasonably dangerous. As set forth *ante,* Gonzales had noticed a squealing sound emanating from one of the wheels and was planning to take the truck in for service after the trip in question. That, however, would not preclude an instruction on strict liability for failure to warn. It would merely give rise to a potential defense in Carmenita if Gonzales "voluntarily and unreasonably proceed[ed] to encounter a known danger, more commonly referred to as assumption of risk." (*Barth* v. *B. F. Goodrich Tire Co., supra,* 265 Cal.App.2d at p. 243.)[4]

In light of our finding the trial court erred in refusing BAJI No. 9.00.7, it is unnecessary to reach Gonzales's remaining contentions.

### CONCLUSION

Viewing the evidence in the light most favorable to Gonzales, substantial evidence in the record supports a failure-to-warn theory. The refusal of the requested instruction was prejudicial error.

Our holding is a narrow one. We express no opinion as to whether Carmenita should have provided better warning with respect to air brakes, but hold merely that Gonzales was entitled to an instruction on said theory.

---

[4] It appears a misapprehension on the part of the trial court as a consequence of counsels' and the trial court's talking at cross-purposes on this issue led to its refusal of the requested instruction. Gonzales sought BAJI No. 9.00.7 on the theory Carmenita, at the time of the 1976 sale, had failed to warn of the need to keep the brakes in adjustment. Carmenita argued strict liability was inapplicable, because when it performed the brake service in December 1978, it engaged in a service, not a sale, so that it would be liable only if the service were performed negligently. The trial court apparently refused the instruction on the basis that if Carmenita had failed to correctly install properly manufactured parts when it performed the 1978 brake job, those facts would support a negligence theory.

## DISPOSITION

The judgment is reversed. Gonzales to receive costs on appeal.

Lui, J., and Danielson, J., concurred.

A petition for a rehearing was denied July 17, 1987, and respondent's petition for review by the Supreme Court was denied September 17, 1987. Panelli, J., and Kaufman, J., were of the opinion that the petition should be granted.