Filed 12/20/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| KEVIN BUCKNER,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MILWAUKEE ELECTRIC TOOL CORPORATION,<br><br>    Defendant and Appellant. | F065140<br><br>(Super. Ct. No. CV239569)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Tulare County. Lloyd L. Hicks, Judge.

Robinson &Wood, Arthur J. Casey and Colin G. McCarthy, for Defendant and Appellant.

Fitzgerald & Lundberg, Kenneth M. Fitzgerald and Barbare A. Lundberg, for Plaintiff and Respondent.

-ooOoo-

In this product liability action, defendant appeals from an order granting a new trial on plaintiff's claims of failure to warn of the dangers of the product. The order was entered on the ground of insufficiency of the evidence to support the verdict, after the jury found in favor of defendant on its sophisticated user defense (*Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56 (*Johnson*)). The jury found plaintiff was a

sophisticated user of the product who already had, or should have had, knowledge of the dangers of the product; therefore, no warning to him was required. We find no abuse of the trial court's discretion in granting the motion and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was employed by Central California Tristeza Eradication Agency (Tristeza), to do maintenance work. On October 7, 2009, he was using a power drill to drill a hole in a piece of angle iron when the drill bit bound and the drill counter rotated, twisting his arm and causing serious injuries. The drill was a Milwaukee Magnum one-half inch pistol grip drill, model No. 0235-1, manufactured by defendant, Milwaukee Electric Tool Corporation (Milwaukee), 17 years earlier. Plaintiff sued defendant and others, alleging causes of action sounding in negligence and strict products liability. In response to the allegations of failure to warn, defendant asserted that plaintiff was a sophisticated user of the drill, and any failure to warn was not a legal cause of plaintiff's injuries because plaintiff already knew or should have known of the dangers involved in the use of the product.

Plaintiff's theory at trial was that the drill could not be used safely without a side handle, also known as an anti-torque bar.[1] Plaintiff contended the drill was negligently and defectively designed because it did not include an interlock device that would prevent the drill from being used when the side handle was not attached. He also asserted defendant failed to adequately warn of the dangers of using the drill, because there was no label on the drill advising that the side handle had to be used to avoid serious injury, and the warnings in the operator's manual were insufficient to advise of the need to use the side handle and the potential for serious injury if it was not used.

---

[1] A side handle is a handle that screws into the side of the drill and is used for torque control. When the bit binds and the drill begins to counter rotate, the user, with one hand on the drill handle and the other on the side handle, can put pressure on the side handle and resist the counter rotation until he or she can let go of the trigger so the drill stops operating.

The drill originally came with a side handle, which could be installed on either side of the drill for left- or right-handed use. The operator's manual for the drill advised the user to "[a]lways use a side handle for best control." A label on the drill itself read: "WARNING / HIGH ROTATING FORCE / HOLD OR BRACE SECURELY TO PREVENT PERSONAL INJURY OR DAMAGE TO TOOL / READ SAFETY INSTRUCTIONS BEFORE OPERATING." At the time of plaintiff's accident, however, Tristeza no longer possessed either the operator's manual for the drill or the side handle. When plaintiff was given the drill to use, it did not have a side handle; he looked it over briefly, then began to use it. Tristeza's maintenance supervisor, Robert Parrott, who was plaintiff's supervisor, testified that, although the drill had an odd key chuck, plaintiff took the drill and changed the bit like he knew what he was doing.

Defendant contended the drill was not negligently designed or defective, the warnings on the drill and in the operator's manual were adequate, and no warning was required in any event, because plaintiff was a sophisticated user of the drill. Evidence of plaintiff's employment history was presented. Plaintiff was not a licensed contractor, but he had been using power tools and doing handyman work since high school. In the 20 years before going to work for Tristeza, he had worked doing construction for contractors, and had worked for himself, doing kitchen remodeling and other small jobs. He had experience in maintenance, roofing, flooring, electrical work, plumbing, carpentry, cement finishing, and framing. He represented to Parrott that he was a certified electrician and plumber. He had used power tools and drills in his employment, and considered himself to be handy with power tools. There was conflicting evidence regarding whether plaintiff had used the subject drill or one like it prior to the accident.[2]

---

[2] Plaintiff testified he used the drill for the first time the day of the accident; he had never used a drill like Tristeza's, or one that required a side handle, before the accident. His coemployees testified plaintiff had used Tristeza's drill in the days prior to the accident while assembling a screen house, which involved using the drill to screw in hundreds of screws. A

3.

Witnesses to the accident testified they observed plaintiff using the drill improperly, holding the drill with one hand, pushing it into the metal he was drilling, while holding the metal with the other hand, pulling it toward the drill, and ignoring warnings from his supervisor not to force the drill. The drill then bound and counter rotated, breaking the bit and twisting plaintiff's arm.

There was evidence that plaintiff, like his coemployees, knew drills can bind and counter rotate when not used properly, or when they hit obstacles, such as nails or knots in wood. There was conflicting evidence regarding whether plaintiff knew about using a side handle in such situations. Plaintiff's expert admitted that someone with plaintiff's background and experience should have known that a drill could bind, counter rotate, and injure the user. Another expert opined that, with his work experience, knowledge, and skill set, plaintiff would be aware of what the subject drill was capable of and that it did have a side handle. Some maintenance worker witnesses testified they did not know the subject drill could not be used safely without a side handle. Some stated it could be used safely; plaintiff's coworkers and an expert testified they had used Tristeza's drill or a similar drill without the side handle numerous times without injury.[3] Plaintiff and his coworkers testified they did not know an injury as serious as plaintiff's could result from using the drill.

The jury, in a special verdict, found the drill was not negligently or defectively designed. The jury did not determine whether there was a failure to warn or inadequate

coemployee also testified plaintiff told him he had used a similar drill in other employment in the past.

[3] Parrott testified he used the Tristeza drill without a side handle for hundreds of times without injury; Barnett testified he used the Tristeza drill without a side handle 50 or more times without incident. Expert Thomas Pendergraft testified he used safely a similar drill without a side handle over 2,000 times. William Corkins, the Tristeza employee who investigated plaintiff's accident on its behalf and who had 50 years of experience with power tools, stated he had used similar drills without a side handle, and had observed many other people doing the same, without advising them it was unsafe to do so.

warning, because it resolved the failure to warn issue by finding plaintiff was a sophisticated user. Plaintiff moved for a new trial on the ground of insufficiency of the evidence, asserting, among other things, that there was insufficient evidence to support the jury's finding that plaintiff was a sophisticated user. Plaintiff defined the danger of which he should have been warned as "this drill could only be used safely with a side handle," and asserted there was no evidence any witness knew of the danger, much less that it was common knowledge among maintenance workers like plaintiff. In opposition, defendant argued the relevant danger was the danger the drill would bind and counter rotate, twisting the user's wrist or arm. It asserted there was sufficient evidence this danger was common knowledge among maintenance workers, and plaintiff's training, experience and knowledge were sufficient to prove he was a sophisticated user. Defendant also argued plaintiff admitted knowing drills could counter rotate and a side handle can prevent this. The trial court granted plaintiff's motion for a new trial as to the failure to warn claims only, on the ground of insufficiency of the evidence to support the verdict. (Code Civ. Proc., § 657, subd. (6).)[4] Defendant appeals, challenging both the order granting a new trial and the pretrial denial of defendant's motion for summary adjudication, which was based on the contention the undisputed facts established plaintiff was a sophisticated user of the drill.

## DISCUSSION

### I.      Motion for New Trial

#### A.      *Standard of review*

An order granting a new trial is appealable. (§ 904.1, subd. (a)(4).) "When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds on which it is granted and the court's reason or reasons for granting the new trial upon

---

[4]      All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

each ground." (§ 657.) A new trial may be granted on all or part of the issues on the ground of "[i]nsufficiency of the evidence to justify the verdict or other decision." (*Id.*, subd. (6).) A new trial shall not be granted on this ground "unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision." (§ 657.)

"The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." (*Jimenez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387.) "[A]n order granting a new trial under section 657 'must be sustained on appeal unless the opposing party demonstrates that no reasonable finder of fact could have found for the movant on [the trial court's] theory.' [Citation.]" (*Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 412 (*Lane*).) "'[T]he presumption of correctness normally accorded on appeal to the jury's verdict is replaced by a presumption in favor of the [new trial] order.' [Citation.]" (*Ibid.*) "The reason for this high level of deference is the trial court is much closer to the evidence than a reviewing court and sits as a trier of fact independent of the jury. [Citation.]" (*McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 303.) "[S]o long as the outcome is uncertain at the close of trial—that is, so long as the evidence can support a verdict in favor of *either* party—a properly constructed new trial order is not subject to reversal on appeal." (*Lane, supra*, 22 Cal.4th at p. 414.) Thus, it is defendant's burden on this appeal to demonstrate that no reasonable trier of fact could have found in favor of plaintiff on the theory set out by the trial court in its new trial order.

### B.    *The trial court's order*

The trial court granted plaintiff a new trial on the failure to warn claims on the ground of insufficiency of the evidence to support the verdict, explaining the jury was clearly wrong when it found plaintiff was a sophisticated user. To establish the

sophisticated user defense, the trial court concluded, defendant was required to prove plaintiff knew or should have known that the drill "could only be used safely with a side handle." The trial court defined plaintiff's class as "handyman," and found he had insufficient training and experience to be classified as a sophisticated user. Additionally, there was no evidence supporting a finding plaintiff should have known of the hazard; Parrott, Barnett, and defendant's retained expert, Pendergraft, all with years of experience in construction or maintenance, did not know it was unsafe to use the drill without a side handle. The trial court rejected defendant's contention the relevant hazard was the danger the drill bit would bind, the drill would twist, and the user would be injured. It stated the relevant issue was whether defendant had a duty to warn plaintiff about what was necessary to safely operate the product. Defendant's "own hazards analysis showed that the drill was not safe to operate (that there was a possibility of serious injury) without using the side handle." The trial court concluded there were three parts to an adequate warning: "1) advise of what the hazard is; 2) advise of the consequences of ignoring the warning, and 3) advise what needs to be done to safely operate the product," and a sophisticated user must be aware of all three. Accordingly, the trial court concluded the evidence did not support the jury's finding plaintiff was a sophisticated user to whom defendant owed no duty to warn and the jury's finding was clearly wrong.

### C.      *Sophisticated user*

Under California's product liability law, "[a] product may be defective if it is dangerous because it lacks adequate warnings or instructions." (*Blackwell v. Phelps Dodge Corp.* (1984) 157 Cal.App.3d 372, 377.) "[M]anufacturers are strictly liable for injuries caused by their failure to give warning of dangers that were known to the scientific community at the time they manufactured and distributed the product: 'Whatever may be reasonable from the point of view of the manufacturer, the user of the product must be given the option either to refrain from using the product at all or to use it in such a way as to minimize the degree of danger.' [Citation.]" (*Carlin v. Superior*

*Court* (1996) 13 Cal.4th 1104, 1108–1109.) The supplier of a product must "'exercise reasonable care to give to those who are to use the chattel the information which the supplier possesses and which he should realize to be necessary to make its use safe for them…. There are many chattels which, even though perfect, are unsafe for any use or for the particular use for which they are supplied unless their properties and capabilities are known to those who use them. If such a chattel is supplied to another whom the supplier should realize to be unlikely to know its properties and capabilities, the supplier is required to exercise reasonable care to give to the other such information thereof as he himself possesses.' [Citation.]" (*Gall v. Union Ice Co.* (1951) 108 Cal.App.2d 303, 309–310 (*Gall*), quoting from Rest.2d Torts, § 388, com. g, pp. 1043–1044.)

Two types of warnings may be given. If the product's dangers may be avoided or mitigated by proper use of the product, "the manufacturer may be required adequately to instruct the consumer as to how the product should be used." (*Finn v. G. D. Searle & Co.* (1984) 35 Cal.3d 691, 699 (*Finn*).) If the risks involved in the use of the product are unavoidable, as in the case of potential side effects of prescription drugs, the supplier must give an adequate warning to enable the potential user to make an informed choice whether to use the product or abstain. (*Id.* at pp. 699–700.) "[D]irections or warnings are in order where reasonably required *to prevent the use of a product from becoming unreasonably dangerous*. It is the lack of such a warning which renders a product unreasonably dangerous and therefore defective." (*Gonzales v. Carmenita Ford Truck Sales, Inc.* (1987) 192 Cal.App.3d 1143, 1151.)

In *Johnson, supra,* 43 Cal.4th, the California Supreme Court for the first time recognized the sophisticated user defense to a cause of action for failure to warn. There, the plaintiff, a trained and certified heating, ventilation, and air conditioning (HVAC) technician, alleged the defendant, a manufacturer of air conditioning equipment, was negligent and strictly liable for injuries he sustained, because the defendant failed to warn the plaintiff that brazing the refrigerant lines to repair the air conditioning equipment

8.

would create phosgene gas, the inhalation of which could result in potentially fatal lung disease. The plaintiff had received formal training in HVAC systems and had passed an examination to become certified by the Environmental Protection Agency as an HVAC technician. Only those with such certification were permitted to purchase the R-22 refrigerant used in commercial air conditioning systems, which can decompose when exposed to heat, such as when a technician brazes air conditioner pipes containing residual refrigerant. The dangers of R-22 were noted on material safety data sheets that were provided to the plaintiff each time he purchased the refrigerant. (*Id.* at pp. 61–62.)

The defendant moved for summary judgment, asserting it had no duty to warn of the potential dangers of R-22 refrigerant, because it could assume the plaintiff and the group of professionals to which he belonged were already aware of those dangers, through their training and experience. (*Johnson, supra*, 43 Cal.4th at pp. 63–64.) The trial court granted the defendant's motion. (*Id*. at p. 64.) The California Supreme Court discussed the sophisticated user defense:

> "The sophisticated user defense exempts manufacturers from their typical obligation to provide product users with warnings about the products' potential hazards. [Citation.] The defense is considered an exception to the manufacturer's general duty to warn consumers, and therefore, in most jurisdictions, if successfully argued, acts as an affirmative defense to negate the manufacturer's duty to warn. [Citation.]

> "Under the sophisticated user defense, sophisticated users need not be warned about dangers of which they are already aware or should be aware. [Citation.] Because these sophisticated users are charged with knowing the particular product's dangers, the failure to warn about those dangers is not the legal cause of any harm that product may cause. [Citation.] The rationale supporting the defense is that 'the failure to provide warnings about risks already known to a sophisticated purchaser usually is not a proximate cause of harm resulting from those risks suffered by the buyer's employees or downstream purchasers.' [Citation.] This is because the user's knowledge of the dangers is the equivalent of prior notice. [Citation.]" (*Johnson, supra*, 43 Cal.4th at p. 65.)

9.

The court noted the sophisticated user defense is a natural outgrowth of California's obvious danger rule—the rule that "'there is no duty to warn of known risks or obvious dangers.'" (*Johnson, supra,* 43 Cal.4th at p. 67.) The court described the sophisticated user defense, as it applies in this state, as follows:

> "A manufacturer is not liable to a sophisticated user of its product for failure to warn of a risk, harm, or danger, if the sophisticated user knew or should have known of that risk, harm, or danger. It would be nearly impossible for a manufacturer to predict or determine whether a given user or member of the sophisticated group actually has knowledge of the dangers because of the infinite number of user idiosyncrasies. For example, given users may have misread their training manuals, failed to study the information in those manuals, or simply forgotten what they were taught. However, individuals who represent that they are trained or are members of a sophisticated group of users are saying to the world that they possess the level of knowledge and skill associated with that class. If they do not actually possess that knowledge and skill, that fact should not give rise to liability on the part of the manufacturer.

> "Under the 'should have known' standard there will be some users who were actually unaware of the dangers. However, the same could be said of the currently accepted obvious danger rule; obvious dangers are obvious to most, but are not obvious to absolutely everyone. The obvious danger rule is an objective test, and the courts do not inquire into the user's subjective knowledge in such a case. In other words, even if a user was truly unaware of a product's hazards, that fact is irrelevant if the danger was objectively obvious. [Citations.] Thus, under the sophisticated user defense, the inquiry focuses on whether the plaintiff knew, or should have known, of the particular risk of harm from the product giving rise to the injury." (*Johnson,* at p. 71.)

The court held the defense applies to both negligence and strict liability causes of action. (*Johnson, supra*, 43 Cal.4th at pp. 71–72.) "In the context of the sophisticated user defense, because the intended users are deemed to know of the risks, manufacturers have no obligation to warn, and providing no warning is appropriate. The focus of the defense, therefore, is whether the danger in question was so generally known within the trade or profession that a manufacturer should not have been expected to provide a warning specific to the group to which plaintiff belonged. Consequently, there is no

10.

reason why the sophisticated user defense should not be as available against strict liability causes of action as it is for negligence causes of action. In both instances, the sophisticated user's knowledge eliminates the manufacturer's need for a warning." (*Id*. at p. 72.)

The user's sophistication is determined as of the time the user was injured. (*Johnson, supra*, 43 Cal.4th at p. 73.) "The timeline focuses on the general population of sophisticated users and conforms to the defense's purpose to eliminate any duty to warn when the expected user population is generally aware of the risk at issue." (*Id*. at p. 74.) The defendant's motion for summary judgment presented undisputed evidence that it was widely known among HVAC technicians that heating R-22 refrigerant could cause it to decompose and form phosgene gas, and such technicians could reasonably be expected to know of the hazard of brazing refrigerant lines. Accordingly, the danger of exposing R-22 to heat by brazing the lines was "well known within the community of HVAC technicians to which plaintiff belonged," and the sophisticated user defense applied, precluding liability of the defendant to the plaintiff for failure to warn of the hazard. (*Ibid*.)

Thus, in order to establish the defense, the defendant must identify the relevant risk, show that sophisticated users are already aware of the risk, and demonstrate that the plaintiff is a member of the group of sophisticated users. The parties in this case disagree about how to define the relevant risk and about the scope of knowledge of the risk the group of users must possess in order to be considered sophisticated users. Defendant contends the group need only know of the danger the product poses, and the relevant danger in this case is the possibility that the drill bit will bind or stop, causing the drill to counter rotate and twist the user's arm. Because there was testimony that maintenance workers, including plaintiff's coemployees, knew that drill bits can bind while drilling, causing counter rotation and injury, and plaintiff himself admitted having this knowledge, defendant asserts the danger was generally known among members of plaintiff's group,

11.

and the jury correctly found plaintiff was a sophisticated user. Plaintiff asserts the danger of which the group of sophisticated users was required to have knowledge was that the drill was unsafe when used without a side handle. There was testimony plaintiff and other maintenance or construction workers were unaware of this, so plaintiff contends maintenance workers were not aware of the danger and the jury erred in finding plaintiff to be a sophisticated user who knew or should have known of the danger.

California cases have not defined the danger that needs to be generally known in a trade, profession, or other group in order for members of that group to be considered sophisticated users who require no warning of the danger. The purpose of the requirement that a manufacturer warn consumers about inherent hazards in its products is to permit the consumer to choose to refrain from using the product altogether or to avoid the danger by careful use. (*Chavez v. Glock, Inc*. (2012) 207 Cal.App.4th 1283, 1304.) Because the sophisticated user's knowledge is essentially a substitute for a warning from the supplier of the product, in order for the defense to apply, the scope of knowledge of the sophisticated user must parallel the scope of the warning that would otherwise be required. Thus, authorities discussing the scope of the warning to be given are instructive.

The supplier of a product must use reasonable care to give users of the product the information the supplier possesses which is necessary to make its use safe. (*Gall, supra*, 108 Cal.App.2d at p. 309; Rest.2d Torts, § 388, com. g, pp. 1043–1044.) The supplier may be required to warn of the risks of the product, or to instruct the user how to use the product safely. (*Finn, supra*, 35 Cal.3d at p. 699.) "A manufacturer has a duty to provide an adequate warning to the user on how to use the product if a reasonably foreseeable use of the product involves a substantial danger of which the manufacturer either is aware or should be aware, and that would not be readily recognized by the ordinary user. [¶] A manufacturer has a duty to provide an adequate warning to the consumer of a product of potential risks or side effects which may follow the foreseeable

12.

use of the product, and which are known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge at the time of manufacture and distribution." (BAJI No. 9.00.7.) Considerations in determining whether a failure to warn makes the product defective include: "the normal expectations of the consumer as to how the product will perform, degrees of simplicity or complication in the operation or use of the product, the nature and magnitude of the danger to which the user is exposed, the likelihood of injury, and the feasibility and beneficial effect of including a warning." (*Cavers v. Cushman Motor Sales, Inc*. (1979) 95 Cal.App.3d 338, 347–348.)

We conclude the danger of which the sophisticated user must be aware in order to establish the defense is broader than that suggested by defendant. It is not enough that the user be aware of the danger that the drill may bind and counter rotate when it is used improperly or when the drill bit strikes an obstacle. In order to establish the defense, a manufacturer must demonstrate that sophisticated users of the product know what the risks are, including the degree of danger involved (i.e., the severity of the potential injury), and how to use the product to reduce or avoid the risks, to the extent that information is known to the manufacturer. Thus, in this case, defendant was required to prove sophisticated users know there is a danger the drill may bind and counter rotate, this may cause serious injury to the user, and the risk may be reduced or eliminated by proper use of a side handle.

The trial court instructed the jury using CACI No. 1244 as follows: "Milwaukee Electric Tool Corp. claims that it is not responsible for any harm to Kevin Buckner based on a failure to warn because Kevin Buckner is a sophisticated user of the Magnum 0235 Drill. To succeed on this defense, Milwaukee Electric Tool Corp. must prove that, at the time of the injury, Kevin Buckner, because of his particular position, training, experience, knowledge, or skill, knew or should have known of the Magnum 0235 Drill's risk, harm, or danger." The instructions did not define the relevant "risk, harm, or danger."

13.

In its order granting a new trial, the trial court described the danger a sophisticated user is charged with knowing as: "that the drill in question … could only be used safely with a side handle"; it clarified this meant "that the drill was not safe to operate (that there was a possibility of serious injury) without using the side handle." It also stated the sophisticated user must be aware of three things: what the hazard is, the consequences of ignoring the warning, and what needs to be done to safely operate the product. It concluded that, in this case, for the sophisticated user defense to apply, it was not enough for plaintiff and other maintenance workers to know that drills may bind and counter rotate; they must also know that drills like the one in issue pose a danger of serious injury that may be mitigated by use of a side handle. With this test in mind, the trial court concluded the jury's finding that plaintiff was a sophisticated user was clearly wrong.

The trial court noted plaintiff was a maintenance man with a history of being a handyman in residential construction; he was not a licensed contractor. There was no evidence drills of similar torque to the one in issue were commonly used in such work. Plaintiff testified he had never before used a drill with the power of Tristeza's, and the drills he had used in the past stopped when they bound; he could always control them. Plaintiff had no formal training in tool safety. Parrott and Barnett, who worked with plaintiff, were unaware the drill had a side handle or needed one. Pendergraft, an expert with years of experience in construction, was unaware it was unsafe to use the drill without a side handle. Defendant was aware serious injury could result from use of the drill without the side handle.

The trial court correctly determined the scope of knowledge a sophisticated user must have or be deemed to have in order for the defense to apply and the defendant to be excused from warning the user of the danger. The sophisticated user must know or be deemed to know not only the bare hazard posed by the product, but also the severity of the potential consequences, and any mitigation techniques of which the manufacturer is

14.

aware.  All are necessary in order for the potential user to make an informed decision regarding whether and how to use the product.

We conclude the trial court did not abuse its discretion by granting a new trial. Defendant has not demonstrated that no reasonable finder of fact could have found that plaintiff was not a sophisticated user of the drill.  (*Lane, supra*, 22 Cal.4th at p. 412.)  At the close of trial the outcome was uncertain and the evidence would have supported a finding in favor of plaintiff on the sophisticated user issue.  (*Id*. at p. 414.)  Consequently, defendant has not established an abuse of discretion that would justify reversing the new trial order.

### D.	*Harmless error*

Defendant argues that, even if the sophisticated user defense did not apply, plaintiff was not prejudiced by the judgment against him because he cannot establish that any failure to warn caused his injuries.  It asserts that, even if the language "always use side handle" had been added to the drill's warning label, as plaintiff contended it should have been, Tristeza would not have retained the side handle or the operator's manual; the label still would have been largely illegible, and plaintiff would not have read it.

A new trial may not be granted "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."  (Cal. Const., art. VI, § 13.)  "'"[P]rejudicial error is the basis for a new trial, and there is no discretion to grant a new trial for harmless error. [Citation.] … [¶]  Accordingly, the order granting a new trial is valid only if prejudicial error occurred at the trial." [Citation.]'  [Citation.]"  (*Garcia v. Rehrig International, Inc.* (2002) 99 Cal.App.4th 869, 875.)

> "'The trial judge is familiar with the evidence, witnesses and proceedings, and is therefore in the best position to determine whether, in view of all the circumstances, justice demands a retrial.  Where error or some other ground is established, his discretion in granting a new trial is seldom reversed.  The presumptions on appeal are in favor of the order, and *the appellate court*

*does not independently redetermine the question whether an error was prejudicial, or some other ground was compelling.* Review is limited to the inquiry whether there was any support for the trial judge's ruling, and the order will be reversed only on a strong affirmative showing of abuse of discretion.' [Citation.]" (*Bell v. State of California* (1998) 63 Cal.App.4th 919, 931 (*Bell*), italics added.)

Because the jury found plaintiff was a sophisticated user of the drill, it did not reach the questions whether defendant failed to adequately warn of the risks of the drill and whether any such failure to warn was a substantial factor in causing plaintiff's injury. There was conflicting evidence regarding what warnings should have been given to adequately warn of the danger; plaintiff presented evidence there should have been a label on the drill that told the user to always use the side handle in order to avoid serious injury, as well as instructions in the operating manual for safe use of the drill. Plaintiff testified he had never used a drill like the one that injured him, or a drill that required a side handle, before the accident; he had used only battery powered and smaller drills. When he was handed the drill, plaintiff looked it over; he checked the cord for fraying, made sure the bit was tight, and looked at the body, but saw nothing that stood out as a warning. Plaintiff stated that, if there had been a noticeable warning on the drill that it required a side handle to avoid serious injury, he would have looked for the side handle and used it; he would not have operated the drill without a side handle.

Adequacy of the warnings and causation were questions of fact and conflicting evidence was presented to the jury. We cannot say as a matter of law that, if the jury had found plaintiff was not a sophisticated user of the drill, plaintiff would have been unable to prove causation, and therefore there was no prejudice. The trial court is in the best position to determine the issue of prejudice; we will not independently review that decision or substitute our decision for the trial court's. (See *Bell, supra*, 63 Cal.App.4th at p. 931.) There was adequate support for the trial court's ruling, and we will not reverse it.

## II.	Motion for Summary Adjudication

Defendant contends the trial court improperly denied its motion for summary adjudication of the duty to warn claims, which was based on the ground plaintiff could not prevail on those claims at trial because he was a sophisticated user who did not require a warning of what he already knew or should have known.  The motion sought to prove plaintiff was a maintenance worker, and maintenance workers generally know of the danger that a power drill like the one used by plaintiff could "kick back" and counter rotate if it binds, and a side handle decreases the risk of injury.

When the plaintiff prevails at trial and, on appeal, the defendant challenges the denial of its pretrial motion for summary judgment, courts have held the erroneous denial of that motion "cannot result in reversal of the final judgment unless that error resulted in prejudice to defendant." (*Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833.)  If the trial was fair, there was no prejudice.  (*Ibid*.)

> "When the trial court commits error in ruling on matters relating to pleadings, procedures, or other preliminary matters, reversal can generally be predicated thereon only if the appellant can show resulting prejudice, and the probability of a more favorable outcome, *at trial*.  Article VI, section 13 [of the California Constitution], admonishes us that error may lead to reversal only if we are persuaded 'upon an examination of the entire cause' that there has been a miscarriage of justice.  In other words, we are not to look to the particular ruling complained of in isolation, but rather must consider the full record in deciding whether a judgment should be set aside.  Since we are enjoined to presume that the trial itself was fair and that the verdict in plaintiffs' favor was supported by the evidence, we cannot find that an erroneous pretrial ruling based on declarations and exhibits renders the ultimate result unjust." (*Waller, supra*, 12 Cal.App.4th at p. 833.)

"'A decision based on less evidence (i.e., the evidence presented on the summary judgment motion) should not prevail over a decision based on more evidence (i.e., the evidence presented at trial).' [Citation.]" (*Gackstetter v. Frawley* (2006) 135 Cal.App.4th 1257, 1269.)

17.

Here, although defendant's motion for summary adjudication was denied, defendant prevailed at trial. Thus, while the trial court found triable issues of material fact remaining and denied the motion, after a full hearing of the evidence at trial, the jury found in favor of defendant. The judgment, which was based on more evidence, superseded the ruling on the motion for summary adjudication, which was based on more limited evidence. The trial court then entered its order granting defendant a new trial, based on its conclusion that, after a full presentation of the evidence, the jury's verdict was clearly wrong. The trial court's decision was based on all of the evidence presented at trial. Based "upon an examination of the entire cause," we are not persuaded the denial of the motion for summary adjudication resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.)

The motion for summary adjudication suffered from the same shortcoming as defendant's trial presentation. It assumed sophisticated users need only know a limited amount of information about the danger posed by the product: the possibility the drill would bind and counter rotate without a side handle. The motion did not take into account the duty to give users of the product all the information defendant possessed which is necessary to make its use safe, including the facts of which defendant was aware that a user would need to know to make an informed choice to refrain from using the product altogether, or to use it in accordance with instructions that would mitigate or eliminate the danger. Defendant has not demonstrated that its motion presented undisputed facts and supporting evidence showing that plaintiff was a member of a group which had knowledge of all the information that would otherwise have been required in a warning or instructions accompanying the product.

Defendant contends it presented expert opinion "that those in the maintenance community know that if the bit binds the Drill will counter-rotate, and a side handle decreases the risk of injury from such an incident." It asserts plaintiff did not dispute its evidence or present a counter declaration, thereby admitting the truth of defendant's

18.

evidence.  Plaintiff, however, disputed defendant's facts, citing deposition testimony of plaintiff's coworkers, who had many years of experience in maintenance work, that they did not know the drill required a side handle to be used safely and did not know the severity of the potential injury if the drill bound and counter rotated.  The trial court did not err in concluding triable issues of material fact remained or in denying the motion.

### *DISPOSITION*

The order granting a new trial on the failure to warn claims is affirmed.  Plaintiff is entitled to his costs on appeal.


_____
HILL, P. J.

WE CONCUR:


_____
GOMES, J.


_____
PEÑA, J.